## YUND v. FIRST NATIONAL BANK OF SHAWNEE, OKLAHOMA.

Chattel Mortgages—Lien of Chattel Mortgage Executed and Filed in Another State—Filing—Executed Upon Property Out of the State—Conflict of Laws.

1. A chattel mortgage executed in another state, but not filed there, as required by its laws in order to be valid against creditors, until after the removal of the mortgaged property therefrom did not become a lien upon the property in such state, and, therefore, was not a lien upon it in this state, to which the property was subsequently removed, as against creditors of the mortgagor, the mortgage not having been filed here.

2. The statute of another state requiring a chattel mortgage to be valid against creditors to be filed in the county where the property is situated at the time, and, by judicial construction of such statute by the courts of such state, the property must be situated in the state at the time the

mortgage is executed to authorize its filing, a chattel mortgage executed and filed in that state upon property not located there at the time of the execution of the mortgage never became a lien in such state, and, therefore, was not a lien in this state, to which the property was subsequently removed, as against creditors of the mortgagor, the mortgage not having been filed here.

3. Where a mortgage is executed upon personal property between parties residing in one state or territory upon property there situated at the time of the execution of the mortgage, and it is executed, filed or recorded according to the laws of such state or territory, so that it becomes a valid lien upon the mortgaged property in that state or territory as against creditors or purchasers, and the property is afterwards removed by the mortgagor, without the knowledge or consent of the mortgagee or the holder of the mortgage, to another state or territory, the mortgage remains a valid lien upon the property, which will be enforced against creditors of, or purchasers from, the mortgagor by the courts of the state or territory to which the property has been removed, although not filed or recorded in the latter state or territory, unless the statutes of the latter require foreign mortgages to be filed.

[Decided August 28, 1905.]                    (82 Pac., 6.)

ERROR to the District Court, Albany County, HON. CHARLES W. BRAMEL, Judge.

Replevin. The suit was brought by the First National Bank of Shawnee, Oklahoma, against Charles Yund, to recover possession of certain personal property held by the defendant as sheriff under writs of attachment, and claimed by the plaintiff under certain chattel mortgages. The facts are stated in the opinion. From a judgment in favor of the plaintiff the defendant brought error.

*Burke & Clark* and *N. E. Corthell,* for plaintiff in error.

If it be assumed that a chattel mortgage given and filed in a foreign state pursuant to its laws upon property within its jurisdiction becomes and remains a lien upon such property, notwithstanding its subsequent removal into this state, without any record here, the facts of the case at bar are not

sufficient to authorize recovery by the defendant in error, plaintiff below, under either of its alleged mortgages. Under the decisions in Oklahoma, where the mortgages in question were executed, such instruments are required to be filed in the county where the property is situated at the time of the execution of the mortgage. The two acts of executing and filing the mortgage are everywhere necessary to its validity as against third parties. Both of such acts, therefore, must be performed at a time when the property is so situated as to be within the jurisdiction of the state. And the rule is well settled, as we understand, that a mortgage upon personal property must be both given and filed at a time when the property is within the territorial jurisdiction of the state. The statute requiring a chattel mortgage to be recorded in the county where the property is situated refers to the date of execution, and means that the record must be made where the property then is, rather than where it may be when the record is made. (Bank v. Weed, 89 Mich., 357; Stirk v. Hamilton, 83 Me., 524.) For a still stronger reason, it is held that a mortgage given and recorded in one state upon property which is, at the date of execution, situated in another state does not impose a lien as against third parties. (Golden v. Cockril, 1 Kan., 259; In re Soldiers & Co., 22 F. C., 781, No. 13163; Iron Works Co. v. Warren, 76 Ind., 512; Hardaway v. Semmes, 38 Ala., 657; Clark v. Tarbell, 58 N. H., 88; Lathe v. Schoff, 60 N. H., 34; Pleasanton v. Johnson, 91 Md., 673; Mach. Co. v. Kennedy, 114 Ia., 444; Whitman v. Conner, 40 N. Y. Super. Ct., 339; Green v. Van Buskirk, 7 Wall., 139; Hervy v. Loco Works, 93 U. S., 669; Harrison v. Sterry, 5 Cranch, 289.) And this doctrine is fully endorsed by the Supreme Court of Oklahoma in construing the very statutes under consideration in this case. (Bank v. Evans, &c., Co., 9 Okla., 353.)

The case above cited from Oklahoma clearly applies to the third mortgage and would operate to reverse the judgment as to that mortgage. We think the situation of the

bank as to its first mortgage is no better. That mortgage, not having been filed at the time the property was removed from Oklahoma, was not then a lien upon it as to creditors, and clearly could not become so afterward by a subsequent filing of the mortgage in that territory. After the removal of the property from the territory the Oklahoma law could no longer operate upon it. (Carroll v. Nisbet, 9 S. D., 497; Gall v. Dibrell, 10 Yerg., 176.) We insist, however, as to the first and third mortgages that the plaintiff's case rested upon testimony which is thoroughly discredited, not only because it is in itself evasive, contradictory, improper and generally unsatisfactory, but by direct, unimpeached and convincing evidence on the part of the defendant; so that it is impossible to claim that there is sufficient evidence to sustain the plaintiff's alleged right under any view of the law. The rule that the finding of fact upon conflicting testimony will not be reversed unless the same is clearly against the weight of evidence is based upon sound reason and has its natural and necessary limitations. In the case at bar all the evidence for the plaintiff below was presented by deposition, and this court is as able to weigh it as the trial court, and has the same opportunity. The reason of the rule above stated, therefore, is not applicable to the facts here and the case should stand in this court upon the evidence as though it were a case of original jurisdiction. (Lavelle v. Corrignio, 86 Hun, 135; Thorn v. Frazer, 60 Tex., 259; Butler v. Hannah, 103 Ala., 481; Ritmaster v. Brisbane, 19 Colo., 371; Baker v. Rockabrand, 118 Ill., 365; Durham v. Carbon Coal & Min. Co., 22 Kan., 243; Martin v. Brown, 4 Minn., 201.) The plaintiff had the burden of proof. Much of the evidence required by the nature of the case was peculiarly in its possession or within its reach. If its claims were true, there were many witnesses and much proof available. Upon all material or important questions it produced the testimony of only two persons, and these, persons who were largely interested. Both these witnesses are self-contradictory in their testimony, which,

being written out and signed by them, might be supposed
to be as nearly correct as they wished and were able to make
it. It cannot be fairly said to be reliable evidence. A ver-
dict not supported by reliable evidence will be set aside.
(Witters v. Kinser, 53 Ill. App., 37; Warren v. Gilman, 15
Me., 70.) Opposed to this evidence, on the other hand, was
the testimony of two disinterested witnesses produced by
the defendant.

In case of a dispute between the mortgagee in a chattel
mortgage and a third person, the description of the property
must be sufficient to enable a third person, either by means
of the mortgage alone or by means of such inquiry and ref-
erences as the mortgage itself suggests, to distinguish the
property intended by the description. The descriptions in
these mortgages are defective in varying degrees in respect
to this requirement. They do not in any case give the loca-
tion of the property, nor state in whose possession it is, nor
whether it was all the property of the same kind that the
mortgagor owned. And the description applies to a large
number of common articles which cannot be distinguished
without some special method suggested by the mortgage.
The witnesses identified the property, not by means of the
mortgage, but because they had seen it before, and thus
assumed that it was the property described. Such a descrip-
tion is insufficient to bind the property in the hands of third
persons. (6 Cyc., 1031, 1025; 5 Ency. L., 956, 962; Jones on
Chattel Mortgages, 55; Hayes v. Wilcox, 61 Ia., 1732; Orms-
by v. Nolan, 69 Ia., 130; Warner v. Wilson, 73 Ia., 719;
Plano Mfg. Co. v. Griffith, 75 Ia., 102; Barrett v. Fish, 76 Ia.,
553; Kelly v. Reid, 57 Miss., 89; Nicholson v. Karp, 58
Miss., 34; Leffell v. Miller, 75 Miss., 324; Tabor v. Samp-
son, 4 Colo., 426; Hutton v. Arnett, 51 Ill., 198; Tindall v.
Wasson, 74 Ind., 495; Colden v. Cockril, 1 Kan., 259; Boze-
man v. Fields, 44 Mo. App., 432; Huse v. Estobrooks, 67
W. Va., 223; F. N. Bk. of Wabena v. Hendrickson, 67
Minn., 293; Hardaway v. Jones (Va.), 41 S. E., 957;
Solinsky v. O'Connor (Tex.), 54 S. W., 935; Holman v.

Whittaker, 119 N. C., 113; Dodds v. Neal, 41 Ark., 70; Stonebreaker v. Ford, 81 Mo., 532; Bank v. Metcalf, 29 Mo. App., 384; Crosswell v. Allis, 25 Conn., 301; Meredith v. Kunze, 78 Ia., 111; Sonders v. Voorhees, 36 Kan., 138; Richardson v. Alpena Lbr. Co., 40 Mich., 203; Bank v. Johnson (Neb.), 94 N. W., 837; Union State Bk. v. Hutton, 61 Neb., 571; Leighton v. Stuart, 19 Neb., 546; Price v. McComas, 21 Neb., 195; Grimes v. Donnell, 23 Neb., 197; Park v. Chese, 62 Vt., 206; Jacobson v. Christenson, 18 Utah, 149; Mach. Co. v. Elevator Co., 48 Minn., 404.)

The mortgages in question depend for their force against third parties wholly upon the statute under which they are executed, and it must be shown by pleading and proof that they were made in the manner and with all the formalities required by the statute. (Gould on Pleading, 180; Morehouse v. Cotheal, 21 N. J. L., 480.) Copies of the original filed mortgages are in evidence. The subscribing witnesses were not produced, but the cashier of the plaintiff was permitted over objection to testify that he saw the mortgage signed by the maker and the witnesses in each case; and as to the second mortgage that he saw the witnesses sign in the presence of the maker; and as to the third mortgage that he saw one of the witnesses sign at the time the maker signed it. The testimony was neither competent nor sufficient to prove the execution of the mortgages, which, under the law of Oklahoma, must to be valid have been signed by the mortgagor in the presence of two persons who must have also signed the same as witnesses thereto. The rule requiring attesting witnesses to be called rests upon most substantial and important grounds. (Greenleaf on Ev., 569; 2 Jones on Ev., 539; Reynolds Theory of Evidence, 62; Clark v. Courtney, 30 U. S., 319-343; Warner v. R. R. Co., 31 O. St., 265; Stevens v. Irwin, 12 Cal., 306; Jackson v. Root, 18 Johns., 60; Willoughby v. Carleton, 9 Johns., 136; McPherson v. Rathbun, 11 Wend., 97; Jackson v. Goger, 5 Cow., 383; Wilson v. Betts, 4 Den., 201, 209; Williams v. Davis, 2 N. J. L., 259; Corlis v. Van Note, 16

N. J. L., 324; Hudson v. Puett, 86 Ga., 341; Ry. Co. v. McRae, 82 Tex., 614; R. Co. v. Jones, 92 Ala., 218; McGowan v. Reid, 27 S. C., 262.) This primary and best evidence may be dispensed with in case the testimony of the subscribing witnesses cannot be had, as when they are dead, or beyond the jurisdiction, or cannot be found, or are insane or incompetent, etc.; but in such case the party offering secondary evidence must show that he has been diligent in his efforts and that some sufficient reason exists why the primary evidence cannot be had. (2 Jones on Ev., 541, 542; 1 Greenleaf Ev., 572, 574.)

But does the lien of a mortgage given and recorded in another state upon property there situated, so as to become a binding lien in that state, follow the property when removed to this state, and, without being recorded here, remain a lien as though it were recorded? This is an important question of first instance in this state upon which a just and permanent rule should be laid down, and we invite the careful consideration of this court upon it. A decided preponderance in number of authorities upholds the rule; and were it a mere matter of procedure or convenience we should not ask the court to disturb the general current of decision, or even to spend time and effort in examining the grounds upon which it rests. A fair statement of the rule as laid down by text writers, and upheld by decided cases, is the following: "The law of the place of the contract, when this is also the place where the property is, governs as to the nature, validity, construction and effect of a mortgage, which will be enforced in another state as a matter of comity, although not executed or recorded according to the requirements of the law of the latter state." (Jones Chat. Mort., 299.) Forceful argument is not wanting in the opinions of the courts which uphold this rule, and the reasons on both sides of the question are cogent ones. The security of liens should not be lightly disturbed nor precariously held. The convenience and facility of loans upon chattel security are greatly promoted by leaving the posses-

sion of the property with the mortgagor. The inherent risks, however, are necessarily greater than in the case of real estate loans. The property is perishable. It is movable. It is more actively traded and passed from hand to hand. And in many cases its value would be much impaired, if not destroyed, by forbidding its sale or removal. It would seem, therefore, as though a removal or disposition, unless it amounts to a practical theft—a surreptitious taking and conversion from a mortgagee practicing a diligence somewhat approximating that which a prudent man exercises in protecting his own goods—should be at the peril or loss of the mortgagee rather than an innocent purchaser. A pledgee, at common law, was bound to keep possession of the pledge at his peril, except in case of surreptitious or forcible caption of the property. When the statute creates an artificial possession by record of the lien, which it extends over an entire county or state, it would seem to be giving protection enough; and numerous, strong and respectable authority exists for this view. (Montgomery v. Wight, 8 Mich., 143; Boydson v. Goodrich, 49 Mich., 65; Corbett v. Littlefield, 84 Mich., 30; Verdier v. Laprete, 4 La., 41; Zollicoffer v. Briggs, 19 La., 521; Green v. Bentley, 114 F., 112; McCabe v. Blymoye, 6 Phila., 615; Farnsworth v. Shepard, 6 Vt., 521; Woodward v. Gates, 9 Vt., 361; Gates v. Gaines, 10 Vt., 349; Lynde v. Melvin, 11 Vt., 686; Kendall v. Sampson, 12 Vt., 515; Rothwood v. Collanor, 14 Vt., 141; Skiff v. Soloce, 23 Vt., 279; Donald v. Huett, 33 Ala., 545; Cronville v. Skipper, 6 Fla., 583; Saunders v. Williams, 5 N. H., 215; Wrecking Co. v. The Katy, 3 Wood., 186; Harrison v. Sterry, 5 Cranch., 299; Snyder v. Yates (Tenn.), 79 S. W., 796; Armatage v. Spohn, 4 Phila. Dist. R., 270; Bank v. Carr, 15 Phila. Sup. Ct., 246.)

Our own statutes, expressing the public policy of the state, incline to the view here urged. They require a record in the county where the property is situated; and in case of removal to another county, by consent of the mortgagee, the mortgage must "immediately" be re-recorded there. (R.

S., 2812, 2815.) As to third parties, the mortgage is void unless filed, and takes effect only when filed and from the time of filing. (R. S., 2811, 2816.) It ceases to be valid sixty days after the debt matures unless its lease of life be renewed by affidavit. (R. S., 2817.) Having provided so effectually for the protection of purchasers and creditors against mortgages filed in our own state, it can hardly be said that our statutes indicate a public policy favoring foreign mortgages, and giving them greater vitality and sanctity than our own. Comity does not require that such favor be shown.

The prevailing rule, which the defendant in error seeks to have adopted here, has been found, in its extreme application, to be intolerable; and some states have already been forced to modify it by legislation, requiring foreign mortgages to be re-recorded within a reasonable time when the property is brought into the state. (Johnson v. Hughes, 89 Ala., 588; Ames Iron Works v. Chinn (Tex.), 38 S. W., 247 (Ga.); Jones Chat. Mtgs., 200.)

And, in several states, the statutory rule and the public policy declared by the courts requires the mortgagee, at his peril, to see that his mortgage is refiled, immediately or within a limited time, in any other county to which the mortgaged property may be removed. (Jones on Chattel Mtgs., 193, 194, 213, 231, 232, 233; Turner v. Caldwell, 15 Wash., 274.)

Sometimes the prevailing rule above referred to is upheld theoretically, but some pretext is found for avoiding its practical application. Such seems to be the practice in Oklahoma. (Richardson v. Shelby, 3 Okla., 68; Bk. v. Evans, &c., Co., 9 Okla., 353.) In other states it is the established rule that the mortgagee must exercise the utmost diligence in following up the mortgaged property and foreclose his mortgage or take possession immediately upon default. Negligence on his part is fatal to his claim when others become interested in the property. (Travis v. Mc-

Cormick, 1 Mont., 148; Reed v. Evans, 19 Ill., 594; Arnold v Stock, 81 Ill., 407.)

It may be that some intermediate rule may be found which, taking the policies of the laws, both of the foreign state and of our own, into consideration, having regard to the facts of diligence or want of diligence of the mortgagee, the nature of the property and the circumstances of its removal and detention, and other pertinent facts, would be fairly just to all parties. In any case it seems to us that the diligence or want of diligence of the mortgagee cannot be left wholly out of view. A want of reasonable diligence on his part is tantamount to an actual fraud, or to an implied permission to so remove and deal with the property that the fraud is constructive and the statutes providing for refiling in case of permissive removals ought to come into play.

*C. P. Arnold*, for defendant in error.

A chattel mortgage executed and recorded in the state where the property is situated will, if valid under the law of the place of execution, be enforced by the courts of the state into which the property is afterwards brought. This question has been settled, if any legal question has been settled, by reason and authority. In support of this principle, with practical unanimity, are found all the courts of last resort which have passed on the question, and it has been passed upon in nearly every state in the Union. (Beall v. Williamson, 14 Ala., 55; Hall v. Pillow, 31 Ark., 32; Bigelow v. Bridge Co., 14 Conn., 583; Hunford v. Canty, 50 Ill., 376; Blystone v. Burgett, 10 Ind., 28; Ames Iron Works v. Warren, 76 Ind., 513; Arnold v. Potter, 22 Ia., 194; Smith v. McLean, 24 Ia., 322; Simms v. McKee, 25 Ia., 341; Golden v. Cockrill, 1 Kan., 259; 81 Am. Dec., 510; Denny v. Faulkner, 22 Kan., 89; Handley v. Harris, 48 Kan., 606; 30 Am. St. Rep., 322; Bank v. Massey, 48 Kan., 762; Wilson v. Carson, 12 Md., 54; Langworthy v. Little, 12 Cush. (Mass.), 109; Bank v. Danforth, 14 Gray (Mass.), 123;

Barker v. Stacy, 25 Miss., 471; Smith v. Hutchings, 30 Mo., 380; Feurt v. Rowell, 62 Mo., 524; Bank v. Morris, 114 Mo., 255; 35 Am. St. Rep., 754; Bank v. Metcalf, 29 Mo. App., 384; Ofutt v. Flagg, 10 N. H., 46; Ferguson v. Clifford, 37 N. H., 88; Martin v. Hill, 12 Barb. (N. Y.), 631; Tyler v. Strange, 21 Barb. (N. Y.), 198; Edgerly v. Bush, 81 N. Y., 199; Nichols v. Mase, 25 Hun (N. Y.), 640; Hornthal v. Burwell, 109 N. C., 10; Kanaga v. Taylor, 7 O. St., 134; 70 Am. Dec., 62; Ryan v. Clanton, 3 Strobh. L. (S. C.), 411; Craig v. Williams, 90 Va., 500; Peterson v. Kaigler, 78 Ga., 466; Cool v. Roche, 20 Neb., 550.)

The argument is advanced, that to make a valid chattel mortgage, the mortgaged property must be within the jurisdiction where the mortgage is signed, and when it is signed. It is said that because this mortgage was signed in Pottowatomie County, while the property was temporarily in the Indian Territory, it is a nullity. It does not appear what special sanctity attaches to the mere place where the instrument is signed and attested, other than is involved in the application of the well known rule of law relating to the place of contract, or why, in the absence of intervening rights, the property mortgaged must at that particular time be in the same county where the instrument is drawn. No one is affected or interested in the place where the mortgage is drawn, as a practical question, and it would seem that no useful end is served by signing the mortgage within actual view of the property. Further than that, in the case presented by the record, other considerations control, and among them the following: (a) Under the Oklahoma law, the situs of the property which was temporarily in Indian Territory for two days after the mortgage was signed was in Pottowatomie County, that being the residence of the mortgagor. (b) In this case, the Gemmel property belonged in Pottowatomie County and for a long time its situs had been there. It was already mortgaged to the defendant in error and no money was paid to Gemmel, the vendor, the name of

the defendant in error being simply substituted for that of Gemmel, who stood in Gemmel's shoes by subrogation. Under the facts as shown by the record, it was virtually the bank which sold this property to Honeycutt, and, in the eyes of the law of Oklahoma, the location of the property, at the date the mortgage was signed, was in Pottowatomie County, the property itself having been removed there immediately. (c) Under the facts shown by this record, even if the question could be successfully raised as to a lack of formality in the mortgage in question, the defendant in error would be subrogated to its rights under the former mortgage executed by Gemmel. (27 Ency. L., 248; Lasua v. Myhre (Wis.), 93 N. W., 811; Yaple v. Stevens, 36 Kan., 680.) (d) The expressions, found in some decisions, using such words as "The time of the execution of the mortgage," etc., in no case seem to have been used with any view of their application to such facts as are shown by this record. The word "execution" is a broad one, and includes all the formalities necessary to make a valid instrument, as against the world. The record of the mortgage can be said to be included within its terms. For the mortgage, in Oklahoma, as in Wyoming, is void, an absolute nullity, as if it had never been signed, as to third parties, until it has been recorded. As to them, the record of the mortgage is its execution. (e) A reasonable construction of the provisions has always been placed upon these statutes. "Where, at the time a mortgage was executed, the property was in one county, but was intended to be removed immediately to another county, it was held sufficient to record in the latter county alone, and this *although the record was actually made before the property arrived there.*" (Iron Works v. Chinn, 15 Tex. Civ. App., 88; Avery v. Wilson, 47 S. C., 78; Harris v. Jones, 83 N. C., 317.) (f) The cases cited in support of the contention that the property mortgaged must be situated in the state where the mortgage is given, it is believed, will upon examination be found to involve other considerations than here control.

The cases, Bank v. Weed, 89 Mich., 357, and Stirk v.
Hamilton, 83 Me., 524, are cases construing provisions where
both mortgagor and mortgagee were non-residents of the
state where the mortgage was filed; and, like the case of
Greenville National Bank v. Evans, &c., Co., 9 Okla., 353,
construe other statutory provisions than the ones here in-
volved.

The claim is also advanced that the description of the
property is insufficient. Counsel are in error in the state-
ment that the mortgages do not state in whose possession
the property is. All of them state that the property is in
the possession of the mortgagor. Counsel also erroneously
state that the mortgages do not contain a description of the
situs of the property. That situs is fixed by the mortgages
in Pottowatomie County. It would be difficult to suggest a
more definite description of the live stock than is contained
in these mortgages. They are all described by color, sex
and age. "The description need not be such as would enable
a stranger to select the property. A description which will
enable third persons, aided by inquiry, which the instrument
itself suggests, to identify the property, is sufficient. Writ-
ten descriptions of property are to be interpreted in the
light of facts known to and in the minds of the parties at
the time." (Jones on Mortgages, Secs. 53, 54.)

The production of witnesses was waived and the execu-
tion of the mortgages admitted, by stipulation of parties.

Under the code it is not necessary to call or account for
the attesting witnesses, to prove the execution of a deed or
other written instrument, other than a will. Such execution
may be proved either by one or more of the subscribing
witnesses, the officer before whom the instrument was ac-
knowledged, *or the party who signed and executed the same.*
(Garrett v. Hanshue, 53 O. St., 482; Bowlin v. Hax., 55
Mo., 446.) This decision is based largely on the doctrine
that the rule generally accepted was caused by the fact that
parties to an action were incompetent to testify, but that
the change in the statute avoided the rule. But in any

event the witnesses were not required to be produced, for they were out of the jurisdiction of the court. (1 Greenleaf's Ev., Secs. 532, 716.) The case was tried in this state, and not in Oklahoma, where the depositions were taken. Secondary evidence is admissible to establish the execution of a paper, where the subscribing witness is out of the jurisdiction of the court. (Otto v. Trump, 115 Pa., 425; Edgar v. Brown, 4 McCord L. (S. C.), 91; Armstrong ads. Glover, 15 N. J. L., 186; Van Doran v. Van Doran, 3 N. J. L., 575; Teall v. Van Wyck, 10 Barb., 376; Sluby v. Champlin, 4 Jones, 461; Grogan v. U. S. Industrial Ins. Co., 90 Hun, 521; Edwards v. Sullivan, 8 Ired. L., 302 (N. C.); Little v. Chauvin, 1 Mo., 626; Clardy v. Richardson, 24 Mo., 295; Ellis v. Smith, 10 Ga., 253; Lazarus v. Lewis, 5 Ala., 457; Buchanon v. Wise, 34 Neb., 695; Wiley v. Bean, 6 Ill., 302; Frost v. Wolf, 77 Tex., 455.)

Evidence of the handwriting of the party, or proof of execution by the party, is sufficient without proving the handwriting of the attesting witness, where said witness cannot be produced in court. (Cox v. Dawes, 17 Ala., 714; McMinn v. O'Connor, 27 Cal., 238; Valentine v. Piper, 23 Pick., 85; Morgan v. Curtenius, 4 McLean, 368; Landers v. Bolton, 26 Cal., 412; Ins. Co. v. Gray, 80 Ill., 28; Jones v. Roberts, 65 Me., 273; Downs v. Downs, 2 How. (Miss.), 915; Clardy v. Richardson, 24 Mo., 295; Cook v. Husted, 12 Johns., 188; White v. Holliday, 20 Tex., 679; Sherman v. Transp. Co., 31 Vt., 162.)

In this case part of the testimony was by deposition and part was oral. The judgment of the court involved the findings that led up to it. The witnesses Little and Wells were before the court, and here in this proceeding. Their credibility is so closely woven into the record in this case, into every argument advanced, as to become an indivisible part of the whole testimony. The court had the opportunity, on the trial, to test their credibility that this court cannot have. The judgment of the trial court was not a light and trivial thing, to be brushed aside on the mere dis-

content of the disappointed litigant, but the solemn and deliberate judgment of that tribunal. Its findings will not be reversed or set aside, unless error is clearly shown, unless its findings are not sustained by sufficient evidence or are clearly against the weight of evidence. (Rainsford v. Massengale, 5 Wyo., 9; Edwards v. Murray, 5 Wyo., 157; Smith Drug Co. v. Casper D. Co., 5 Wyo., 515; Jackson v. Mull, 6 Wyo., 55; Marshall v. Rugg, 6 Wyo., 284; Conway v. Smith Mer. Co., 6 Wyo., 479.)

BEARD, JUSTICE.

The defendant in error, hereafter called defendant, brought this action against plaintiff in error, hereafter called plaintiff, to recover the possession of certain personal property which was then held by the plaintiff, as sheriff of Albany County, by virtue of a writ of attachment issued out of the office of the clerk of the District Court of said county in the case of Nyquist, Peterson & Co. against one J. V. Honeycutt. The defendant claimed to be entitled to the possession of the property under three chattel mortgages. The plaintiff answered, pleading the writ of attachment and denying the validity of defendant's mortgages. The property was taken from the possession of plaintiff upon the writ of replevin and delivered to the defendant. The case was tried to the court without a jury and judgment rendered in favor of defendant for a considerable portion of the property, and plaintiff brings the case here on error.

The petition contains three counts, each based upon a separate mortgage describing distinct portions of the property in controversy. It appears from the record that J. V. Honeycutt on February 20, 1900, executed to Willard Johnson, cashier of defendant, a chattel mortgage upon two mules, a wagon and a set of harness, to secure his note for $185 that day borrowed from defendant and due August 20, 1900, which mortgage was filed in the office of the register of deeds of Pottowatomie County, Oklahoma, on

the following day; the property being situated in that county both at the date of the execution and of the filing of the mortgage.

February 24, 1900, said Honeycutt executed to one Bradbury a mortgage on two other mules to secure his note to Bradbury for $175, due October 24, 1900, which note was on the same day assigned to defendant and the mortgage was filed March 13, 1900; the mortgaged property being in said Pottowatomie County at the time of the execution of the mortgage, but was removed from that territory before the mortgage was filed, as appears from the evidence to be considered later.

March 17, 1900, said Honeycutt executed another mortgage to said Johnson, cashier, upon a number of other mules, certain horses, and other property, consisting of a grading outfit, to secure his note to defendant for $746, due July 17, 1900, which mortgage was filed March 19, 1900. It is admitted by counsel for defendant in his brief that the property covered by this mortgage was in the Indian Territory at the time the mortgage was executed. It further appears from the evidence that this property was purchased by Honeycutt from one Gemmil on the day the mortgage was given, and that Honeycutt went to the Indian Territory where the property was at that time and where it was delivered to him on the following day, March 18. In each instance all of the parties to the several mortgages resided in Pottowatomie County, Oklahoma, and the mortgages were filed in that county and not elsewhere. There is considerable conflict in the evidence as to the location of the property covered by the second and third mortgages at the time they were filed. All of the evidence was in the form of depositions and the court made no finding of facts. Honeycutt was the only witness who testified to the location of the property covered by the second mortgage at that time. His deposition was twice taken, and in his first deposition he states that all of the property covered by the three mortgages was taken to the Indian Territory and

worked there for some time before he shipped it to Nebraska, some of it three weeks and all of it three or four days. Again, speaking of the property covered by the second mortgage, he says he got it from Bradbury in Pottowatomie County the day he gave the mortgage, kept it there three or four days, then took it to the Indian Territory, and kept it there until he shipped it to Nebraska. In his second deposition he states that this property was at his father's place in Pottowatomie County on March 13. In the absence of a finding of facts by the District Court, we are of the opinion that this property was taken out of Oklahoma within a few days after this mortgage was given and was not there at the time the mortgage was filed. The evidence shows that Honeycutt was engaged in railroad work in the Indian Territory at that time and up to near the time he went to Nebraska. There is also a conflict in the testimony as to the location of the property covered by the third mortgage. Honeycutt testified in his second deposition that he received it from Gemmil on March' 18 in the Indian Territory and at once returned with the stock to Oklahoma, where he kept it for two days and then went to Sapulpa, Indian Territory, and shipped it to Nebraska on March 24 or 25. Two other witnesses testify that the property was shipped from Sapulpa on March 22, and that it was not taken to Oklahoma before shipment; one of these witnesses stating that he had refreshed his memory by referring to the bill of lading, and that he went on the same train with the property. However this may be, we regard it as immaterial. That portion of the mortgaged property which was attached was removed from Oklahoma without the knowledge or consent of the defendant and was brought to Wyoming in June, 1900, the defendant learning in the latter part of July, 1900, of such removal. It was attached August 14, and this action was commenced September 7, 1900.

The statutes of Oklahoma (Sec. 18, Ch. 24, Session Laws 1897) provide as follows: "A mortgage of personal prop-

erty is void as against creditors of the mortgagor, subsequent purchasers and encumbrancers of the property in good faith, for value, unless the original, or an authenticated copy thereof, be filed by depositing the same in the office of the register of deeds of the county where the property mortgaged, or any part thereof, is at such time situated." The first mortgage having been filed where the property was situated at the time it was executed and while the property remained there, became a valid lien as against the creditors of the mortgagor in Oklahoma. The second mortgage was not filed until some time after the property covered by it had been removed from Oklahoma, and it is contended by counsel for plaintiff that for that reason it never became a lien on the property. This contention must be sustained. The mortgage was void as against creditors of the mortgagor in Oklahoma unless filed, and not being filed before the property was removed to the Indian Territory, it went there free of any lien as to creditors, and the subsequent filing in Oklahoma could create no lien upon it in a foreign jurisdiction.

The third mortgage never became a lien as against creditors because not filed where the property was situated at the time it was executed. The Supreme Court of Oklahoma has construed its statute and by that construction we are bound. In the case of Greenville National Bank v. Evans-Snider-Buel Co. (Okla.), 60 Pac., 249-253, it is said that the statute "has only provided for the filing of mortgages on property which is located within the territory at the time of the execution of the mortgage." And in First National Bank v. Weed, 89 Mich., 373, in construing the language of the statute providing for the filing of chattel mortgages in the office of the town clerk of the township, etc., "where the property is," it is said: "It is plain that it is the intent of the statute that the filing should be in the township or city where the property is at the time of the execution and delivery of the mortgage, and not in some other township or city to which the property may be re-

moved after such execution and delivery." Stirk v. Hamilton, 83 Me., 524, is to the same effect.

The second and third mortgages not being valid liens upon the property in Oklahoma, where they were made, were not liens upon it in this state, to which the property was subsequently removed, as against the creditors of the mortgagor. The only remaining question which it is necessary to consider is in relation to the first mortgage. Upon this question the law seems to be so well settled that it would serve no good purpose to review the authorities on the point. It may be safely said that the great weight of authority is to the effect, that where a mortgage is executed upon personal property between parties residing in one state or territory upon property there situated at the time of the execution of the mortgage, and it is executed, filed or recorded according to the laws of such state or territory so that it becomes a valid lien upon the mortgaged property in that state or territory as against creditors or purchasers, and the property is afterwards removed by the motrgagor, without the knowledge or consent of the mortgagee or the holder of the mortgage, to another state or territory, the mortgage remains a valid lien upon the property, which will be enforced against creditors of or purchasers from the mortgagor by the courts of the state or territory to which the property has been removed, although not filed or recorded in the latter state or territory, unless the statutes of the latter require foreign mortgages to be filed. (A. & E. Enc. (2d Ed.), 1342, and cases cited in notes; 24 A. & E. Enc. (2d Ed.), 93, and cases cited in notes.)

In many cases the courts have gone much further than stated above in sustaining the lien of the mortgage. In a recent case involving a similar question as to the validity of a contract of conditional sale of personal property made in another state and where the property was afterwards brought into this state and sold to an innocent purchaser, no record of such contract being required in the state where made, and it was not filed in this state, it was held that the

title of the conditional vendor was superior to that of the purchaser from the conditional vendee and that the courts of this state would enforce the contract. (Studebaker Bros. Co. v. Mau, 80 Pac., 151.) After a careful reconsideration of that case upon a full argument on a petition for a rehearing, a rehearing was denied in an opinion handed down at this sitting of the court.

In some states it has been provided by statute that foreign mortgages must be filed or recorded in those states within a reasonable or specified time after the property is brought into the state, in order to preserve the lien against creditors or purchasers; but our statutes contain no such requirement.

For the reasons above stated, the District Court properly held that the defendant was entitled to the possession of the property covered by the first mortgage, dated March 20; but erred in concluding that it had any valid lien upon the balance of the property in controversy as against the plaintiff. The judgment of the District Court is reversed and the case remanded to that court for a new trial or other proceedings in accordance with the views expressed in this opinion.                    *Reversed and remanded.*

POTTER, C. J., and VAN ORSDEL, J., concur.