REUBEN MOSKO, doing business as Denver Motor
Finance Company,

*Plaintiff and Appellant,*

vs.

NELL O. SMITH,

*Defendant and Respondent.*

(No. 2359; April 22nd, 1947; 179 Pac. 2d. 781)

240

For the Plaintiff and Appellant, the cause was submitted upon the brief of Burt Griggs of Buffalo, Wyoming and David H. Morris of Denver, Colorado.

For the Defendant and Respondent, the cause was submitted upon the brief of H. Glenn Kinsley, and James Munro, both of Sheridan, Wyoming, and William C. Holland of Buffalo, Wyoming.

242

## OPINION

BLUME, Justice.

This is an action brought by Reuben Mosko, doing business as Denver Finance Company, against Nell O. Smith, to replevin a 1941 Oldsmobile Club Sedan

of the value of $1000.00. The plaintiff claimed the right to the possession of this automobile pursuant to a chattel mortgage made by one Ed Orr, dated and acknowledged on October 25, 1944, which was given to secure a promissory note for $613.20, payable in twelve monthly installments of $51.10 each. The chattel mortgage was filed in Lake County, Colorado, where the mortgagor was then located on November 3, 1944. The mortgage provided that the mortgagee should have the right to take possession of the mortgaged property upon default in the payment of principal or interest or upon breach of any of the conditions named in the mortgage. And it appears and was alleged that the mortgagor had defaulted in the payment of the note given by him and in each and every installment due thereon. The defendant, Nell O. Smith, answered, claiming that she was a purchaser of the mortgaged property above mentioned in good faith without notice of the mortgage above mentioned, and that her rights are superior to the rights of the plaintiff herein. The trial court sustained this contention, entered judgment accordingly, and from that judgment the plaintiff has brought this case to this court by direct appeal.

Only a few of the facts herein are disputed. It appears that Ed Orr, above mentioned, purchased the automobile in question at Casper, Wyoming, on August 2, 1943, and received a certificate of title therefor. The automobile was taxed at Casper, Wyoming, during 1944 and 1945, and at all times up to the trial of this case bore a Wyoming license and never at any time had a Colorado license. At the time when Ed Orr bought the automobile he, together with his wife, Grayce Orr, were living at Casper, Wyoming. Some time during the early part of the year 1944, however, Ed Orr moved to Leadville, Colorado, and it seems that from that time on he and his wife were living separate and apart. Mrs.

Orr remained at Casper, Wyoming, working for an automobile company, and daily using the automobile in going to and from the place where she was working. Shortly before October 25, 1944, Ed Orr came to Casper, took possession of the automobile, took it to Leadville, Colorado, and mortgaged it as above mentioned on October 25, 1944. His wife, Grayce Orr, however, within a few days thereafter, went to Leadville and again took possession of the car, returning it to Casper, Wyoming, and the evidence herein shows that the automobile was not in Colorado to exceed five or six days and had been removed to Wyoming prior to November 3, 1944. On August 1, 1945, Ed Orr assigned and transferred title to the foregoing automobile to one H. L. Mayor. On August 11, 1945, H. L. Mayor, for the consideration of $1300.00, assigned the certificate of title to Nell O. Smith, the defendant herein, and certificate of title was thereafter duly issued to her by the County Clerk of Johnson County, Wyoming, on the 13th day of August, 1945. The trial court made the following findings:

"That at the time of the filing of this action, the defendant was and ever since has been and now is the owner and in possession of and entitled to the sole and exclusive possession of that certain automobile described in Plaintiff's Petition to-wit: 1941 Oldsmobile Club Sedan, Motor No. G-389 056.

"That said automobile was in the state of Colorado at the time the plaintiff's mortgage was executed but not when it was filed for record at Leadville in Lake County, Colorado on November 3, 1944. Prior to that date said automobile was removed from Colorado to Wyoming where it remained continuously thereafter and was licensed, assessed and taxed in Natrona County for the years 1944 and 1945.

"That the plaintiff in the Spring of 1945 knew, or was chargeable with knowledge, that said automobile had been removed from Colorado to Wyoming.

"The court finds that the plaintiff's said mortgage was never filed as a Chattel Mortgage in the State of Wyoming, and that the Defendant purchased said automobile in the State of Wyoming, for a valuable consideration without notice or knowledge of the Plaintiff's mortgage thereon and that at the date of the filing of this action the Defendant was in possession of said automobile and was and is entitled to the possession thereof." Judgment for the defendant was entered accordingly.

The plaintiff in his specifications of error took exception to the finding of the court that the mortgaged property was not in the State of Colorado on November 3, 1944, and that the plaintiff knew in the spring of 1945 that the automobile had been removed from Colorado to Wyoming. These assignments of error, however, are not argued in the brief of counsel and are accordingly waived in accordance with numerous decisions of this court, including Ideal Bakery vs. Schryver, 43 Wyo. 108, 299 Pac. 284; and Holly Sugar Corporation vs. Fritzler, et al., 42 Wyo. 446, 296 Pac. 206.

The chattel mortgage involved in this case was executed and filed in the State of Colorado as above mentioned, and plaintiff claims that his right is superior to the rights of defendant, an innocent purchaser, under the doctrine of comity as announced by this court in the case of Yund vs. Bank, 14 Wyo. 81, 82 Pac. 6, which doctrine is also recognized in Colorado as shown by Mosko vs. Matthews, 87 Colo. 55, 284 Pac. 1021, and other cases from that state. Sec. 266 of the Restatement of Conflict of Laws states: "If, after a chattel is validly mortgaged, the chattel is taken into another state, the mortgagee's interest in the chattel is recog-

nized in the second state." The rule is stated in 14 C. J. S. 607 as follows:

"As stated in Corpus Juris, frequently quoted with approval, the weight of authority is to the effect that a mortgage, properly executed and recorded according to the law of the state where the mortgage is executed and the property is located, will, if valid there, be held valid even as against creditors and purchasers in good faith in another state to which the property is removed by the mortgagor, unless the transaction contravenes the statute or settled law or policy of the forum; and under this rule, the due execution and recordation of the mortgage, in the state where made and where the property is located, operates as at least constructive notice of the mortgage lien to all persons dealing with the property in the state to which it is removed, and, in the absence of a statute to the contrary, the mortgage is enforceable in the state to which the property has been removed, although it is not recorded there, and even though the mortgagor's removal of the property was felonious. The general rule, of course, does not apply where the mortgage is not properly executed, filed, and recorded in the state where it is made. A removal, within the meaning of the general rule, is one of a permanent rather than a merely temporary or transient nature."

See also annotation, 57 A. L. R. 702, et seq.

The last time we considered that doctrine was in 1925 in the case of Union Securities Co. et al. vs. Adams et al., 33 Wyo. 45, 236 Pac. 513, 50 A. L. R. 23. Since that time two states, namely, Michigan and Louisiana, have, contrary to former holding, given adherence thereto. General Motors Acceptance Corporation vs. Nuss, 195 La. 209, 196 S. 323; Metro-Plan, Inc. vs. Kotcher-Turner, Inc., 296 Mich. 400, 296 N. W. 304, (by a divided court). And since the decision in the Union Securities Company case, supra, the law of Texas, too, seems to be changed in so far as motor vehicles are concerned by reason of an act of the legislature of Texas called the Certificate of Title Act, which seems

to have aimed at preventing the perpetration of fraud on outside owners and holders of liens, in recognition of the fact that in this day and age of rapid travel by automobile such fraud is easily possible and would, if permitted, undermine the moral fibre of some of the citizens of Texas and of other states. A little more than a year ago (December, 1945) the Civil Court of Appeals at Ft. Worth, in Ball Bros. Trucking Co. vs. Sorenson, (Tex. Civ. App.), 191 S. W. 908, stated:

"We are not disposed to hold that a mortgagee, who has a valid and subsisting debt, secured by a lien created in the state of residence of the mortgagee and duly recorded under the law of such state, has the burden of keeping his eye on the movements of the motor vehicle in order to ascertain into what state or into what county, in any such state or states, the vehicle has been carried. Nor that such mortgagee is compelled to file a copy of his mortgage in the state where the vehicle was carried, under such circumstances as appear in the case before us, in order to prevent the loss of his lien. * * * In the light of the Texas Law, on which this suit is bottomed, we specifically decline to follow the harsh rule laid down by the Supreme Court of Texas, in 1921, as disclosed in the opinion in Consolidated Garage Co. v. Chambers, 111 Tex. 293, 231 S. W. 1072."

We should, accordingly, in view of our previous holding and the foregoing almost universally recognized rule, hold the plaintiff's lien to be superior to the rights of defendant, if in fact the mortgage became a valid lien in Colorado against third parties. We must, then, turn to the law of Colorado to determine that fact. Sec. 1, Chap. 32 of the 1935 Colorado Statutes Annotated provides that "except as hereinafter provided, no mortgage of personal property shall be valid against the rights and interest of any third person or persons unless possession of such property be delivered to and remain with the mortgagee, or the mortgage be acknowledged and certified, and filed or recorded as provided in this chapter." The exceptions contemplated by this

statute do not apply in this case. Sec. 8 of the same chapter provides: "Any chattel mortgage acknowledged and certified, as provided in this chapter, * * * may be filed in the office of the clerk and recorder of the county in which the mortgaged property is situated", etc. In the case at bar the automobile in question was removed from Colorado before the mortgage was filed of record and the specific question before us is as to whether or not the mortgage nevertheless became valid as to third parties when it was actually placed of record. The statute as above noted, stating that the mortgage must be filed where the property is situated, indicates that it is to be filed where it is situated at the time of the filing, so that, as the automobile was not in Colorado at the time of such filing, there was then no property to which the lien of the mortgage could attach; compliance with the statute became impossible by reason of the neglect of the mortgagee, and hence the mortgage never became binding on third parties. The text from Corpus Juris Secundum above quoted indicates that result. The few cases which we have found on this precise point so hold unanimously. In Yund vs. Bank, supra, the court considered a second mortgage given in Oklahoma under a statute providing as follows: "A mortgage of personal property is void as against creditors of the mortgagor, subsequent purchasers and encumbrancers of the property in good faith, for value, unless the original, or an authenticated copy thereof, be filed by depositing the same in the office of the register of deeds of the county where the property mortgaged, or any part thereof, is at such time situated." The court said: "The second mortgage was not filed until some time after the property covered by it had been removed from Oklahoma, and it is contended by counsel for plaintiff that for that reason it never became a lien on the property. This contention must be sustained. The mortgage was void as against

creditors of the mortgagor in Oklahoma unless filed, and not being filed before the property was removed to the Indian Territory, it went there free of any lien as to creditors, and the subsequent filing in Oklahoma could create no lien upon it in a foreign jurisdiction." In the case of Bridges vs. Barrett, 126 Ill. App. 122, 126, the court said: "It appears from the bill that the chattel mortgage securing complainants' notes was executed and acknowledged in Memphis, Shelby county, Tennessee, April 20, 1904. It was not recorded there, however, until July 28th following. Meantime, in May, 1904, the mortgaged horses, with one exception, were taken from Shelby county, Tennessee, to Kentucky and subsequently brought into this state. When they left Tennessee the trust deed which conveyed them to secure complainants' notes had not been registered and under the laws of that state was not as yet a valid lien. The subsequent registration of the trust deed in Shelby county, Tennessee, when the property was no longer in that state and when it was within the jurisdiction of Illinois, had no effect anywhere. If valid in Tennessee, the lien of the trust deed would be given the same effect in this state. * * * But it never became valid here. It is difficult to see, therefore, upon what basis it is possible to give it effect here or to exempt it from the operation of our laws. * * * Had the property been in Shelby county, Tennessee, when upon July 28th the trust deed in controversy was registered, the latter might for aught that appears have then become a valid lien in that state. But being then in Illinois the property was subject to and governed by the law of its situs at that time, and not by the law of its owner's domicile." In the case of Cunningham vs. Donelson, 110 W. Va. 331, 158 S. E. 705, it appears that the statute required that a chattel mortgage should be filed in the county of the residence of the mortgagor, which was Ashland county, Ohio, in that case. The mortgagor gave

to Wise the chattel mortgage in question, dated August 27, 1924. It was filed for record in Ashland county, Ohio, on September 19 ,1925. In the meantime, namely in August 1925, the property was removed from Ohio to West Virginia, and was attached by plaintiff in that state on October 30, 1925. The court stated: "As the mortgage under which Wise claims was not legally filed for record in Ohio until after the removal of the property to this state, it is subservient to the lien of the attachment. American Box Ball Co. v. Wood, 50 Okl. 242, 150 P. 1047; Carroll v. Nisbet, 9 S. D. 497, 70 N. W. 634; Galt v. Dibrell, 10 Yerg. (Tenn.) 146." The case of Carroll vs. Nisbet, just cited, while presenting some distinguishing features, too announces substantially the same rule as in the other three cases hereinabove mentioned. And that appears to be true also in Fassett vs. Wise, 115 Cal. 316, 47 Pac. 47, 1095, 36 L. R. A. 505, a case which, however, deals with the removal of chattels from one county to another. We do not, accordingly, see how we can hold otherwise than to sustain the holding of the trial court on the point just discussed.

There are many cases which hold that if the mortgagee knows or consents to the removal of the property the lien of a chattel mortgage given in the state from which the property is removed will become invalid unless the mortgage is filed in the state in which the property is removed. Hess-Harrington, Inc. vs. State Exchange Bank, 155 Kans. 118, 122 Pac. 2d 739. Cases annotated in 57 A. L. R. 714 and 715. It is not, however, necessary to discuss that subject in this case.

The judgment of the trial court must, accordingly, be affirmed, and it is so ordered.

RINER, C. J., and KIMBALL, J., concur.