JEROME P. PARKER-HARRIS COMPANY, Appellant, v. J. W. STEPHENS, Respondent.

Springfield Court of Appeals, August 10, 1920.

1. **COURTS: Recognition of Foreign Laws Cannot Be Claimed as Matter of Right.** The recognition of foreign laws cannot be claimed as a matter of right, but only as a favor or courtesy, but the doctrine of comity is permitted and accepted in all civilized States from mutual interest and convenience, and from moral necessity, to do justice that justice may be done in return.

2. ———: **Foreign Law Will Not Be Enforced to Prejudice of State's Own Rights or Rights of Citizens.** Courts are reluctant to overrule the positive law of the forum in recognizing and enforcing foreign law, and a foreign law not to be recognized and enforced when to do so would prejudice the State's own rights, or the rights of its citizens, or when to give force and effect to a foreign law ing an automobile, made in Tennessee, where the property was, would be to contravene the positive policy of the law of the forum.

3. ———: **Laws Have No Extraterritorial Effect.** The law of a State has no extraterritorial effect.

4. ———: **Conditional Sale Contract, Made in Tennessee, Enforceable in Missouri on Grounds of Comity.** Conditional sale contract covering an automobile, made in Tennessee, wrere the property was, and not recorded there because there was no such requirement, *held* enforceable in Missouri on grounds of comity, against an innocent purchaser of the car for value.

Appeal from Circuit Court of Pemiscot County.—*Hon. Sterling H. McCarty, Judge.*

REVERSED AND REMANDED (*with directions.*)

*E. L. Westbrook* and *Ward & Reeves* for appellant.

(1) At common law a verbal conditional sale contract was good, not only as between the original parties, but also as to innocent purchasers and creditors of the conditional vendee. This rule of law obtained in all the

states, including Missouri, except possibly Illinois, and is also the Federal Rule. Harkness v. Russell, 118 U. S. 663 (and cases there cited); Houston v. Dyche, Meigs (Tenn.), 76; Gambling v. Read, Meigs (Tenn.), 281; Buson v. Dougherty, 11 Hum. (Tenn.) 52; Burke v. Harrison, 5 Sneed (Tenn.) 237; Price v. Jones, 3 Head (Tenn.) 84; Cronan v. Honor, 10 Heis. (Tenn.) 534; Association v. Owen, 2 Pickle (Tenn.) 362; Parmlee v. Catherwood et al., 36 Mo. 479; Little v. Page, 44 Mo. 412; Ridgeway et al. v. Kennedy et al., 52 Mo. 24; Robbins v. Phillips, 68 Mo. 100; Wangler v. Franklin, 70 Mo. 659; Sumner v. Cottey, 71 Mo. 121; Kingsland-Ferguson Mfg. Co. v. Culp, 85 Mo. 548; Buggy Co. v. Woodson, 59 Mo. App. 550. (2) Such conditional sales are now (since 1899) required by the laws of Tennessee (offered in evidence) to be evidenced by a written contract or memorandum, but such contract or memorandum is not required by the laws of that State to be recorded and the contract (without recording) is good against subsequent purchasers and creditors of the conditional vendee. Bradshaw v. Thomas, 7 Yers. 497; Tatum v. Jameson, 2 Hum. 298; Tedford v. Wilson, 3 Head, 313; McCombs v. Guyld, 9 Lea, 81; Mfg. Co. v. Nordeman, 10 Cates, 384; Harrison v. Weinstein, 3 Tenn. Civ. App. 217; Wilder v. Wilson, 16 Lea, 552; Taylor v. Pope, 5 Cold. 416; Huffman v. Hughlett, Lea, 554; Guano Co. v. Hunt, 16 Pickle, 94; Bethel v. Bank, 17 Pickle, 132. (3) Notwithstanding our statute requiring chattel mortgages to be filed or recorded in this State, a chattel mortgage duly executed by citizens of a sister State on property located in such State, and recorded there, but not recorded here, will be given full force and effect in this State, even though the mortgagee has transferred the property in this State to an innocent purchaser without actual notice or knowledge of the existence of the chattel mortgage. Geiser Mfg. Co. v. Todd, 204 S. W. (Mo. App.) 287; Smith v. Hutchings, 30 Mo. 380; Feurt v. Rowell, 62 Mo. 524; National Bank of Commerce v. Morris 114 Mo. 255; Brown v. Koenig, 99 Mo. App. 653; LaFayette County Bank v.

Metcalf, Moore & Co., 40 Mo. App. 501; Bank v. Cassidy, 71 Mo. App. 186; Tremian v. Dyotter, 161 Mo. App. 217; Liebing v. Mutual Life Ins. Co., 276 Mo. 118. (4) While we are unable to find a Missouri authority touching the validity of a conditional sale contract duly executed in another State, we insist the same principle of law applicable to a chattel mortgage is likewise applicable to conditional sale contracts, and this has been generally so held in all the States where the question has arisen. 64 L. R. A., note, subdivision (d), 833 (and authorities there reviewed); Studebaker Brothers v. Mau, 110 Am. St. Rep. (Wyoming) 1001; Adams v. Fellows (S. C.), 70 S. E. 722; Wharton on Conflict of Laws, sec. 355; Elliott on Contracts, secs. 1154 and 1155; 22 Am. & Eng. Ency. of L., p. 1341.

*Mayes & Gossom* for respondent.

(1) A conditional sale contract is required to be recorded in this State in order to be valid against creditors and purchasers in good faith. R. S. 1909, section 2889. (2) Comity existing between sovereignties does not require the courts of one State to enforce rights accrued under contracts valid by the laws of another State if to do so is violative of the public policy of the forum as declared by the statute. Atwater v. Brokerage Co., 147 Mo. App. 449; Ruhe v. Buck et al., 124 Mo. 178; Bank of Commerce v. Morris, 114 Mo. 255; Geiser Mfg. Co. v. Todd, 204 S. W. 287; 25 L. R. A. 178-188; Lawson on Contracts (2 Ed.), sec. 341; Cyc. Law and Prac., 675 to 680. (3) The courts of a State having a statute requiring conditional sale contracts to be recorded to be valid against creditors and innocent purchasers will not enforce a conditional sale contract against a resident creditor or purchaser in good faith, when such contract is made in a foreign State where the same has not been recorded and where the laws do not require such contracts to be recorded to be valid against innocent purchasers or creditors. Minor on Conflict of Laws, sec. 130, p. 300; Hervey et al. R. I. Locomotive,

Works, 93 U. S. 664; Public Park Amusement Co. v. Embree-McLean Carriage Co., 40 (Ark.), S. W. 582; 35 Cyc. p., 666; 12 L. R. A. 700, (Old Series). It is the general accepted doctrine of American courts, that mere knowledge on the part of the vendor that the vendee intends to make an unlawful use of the goods sold is not sufficient to invalidate the sale. Curran v. Downs, 3 Mo. App. 468; Michael v. Bacon, 49 Mo. 474; Kerwin & Co. v. Doran, 29 Mo. App. 406.

BRADLEY, J.—Plaintiff, as the original vendor, proceeded in replevin to secure possession of a Packard automobile. The alleged right to recover is based upon a written conditional sale contract executed in Memphis, Tennessee. Before the trial defendant died, and the cause was revived in the name of his administrator, the Citizens Trust Company but the abstracts and briefs here style the case as it was originally, and our use of the word defendant has reference to Stephens. Defendant claims title by virtue of a bill of sale executed in Caruthersville, Mo., by one Martin, plaintiff's conditional vendee. The cause was tried before the court, without a jury, and judgment went for defendant, and plaintiff's after the usual steps, appealed.

On November 19, 1918, at Memphis, where plaintiff and Martin were domiciled, Martin purchased from plaintiff, under a conditional sale contract, the automobile in question, at the price of $1500. Martin paid $300 down, and gave a series of 24 notes of $50 each, due the 1st and 15th of each month. The conditional sale contract provided that the automobile should remain the property of plaintiff until the notes with interest were fully paid, and that in case of default on any note, all of the notes then unpaid should become due and payable, and that in case of default the vendee would at once surrender the automobile, and that plaintiff could at once proceed to enforce its rights by sale. It was further provided in the contract that if the vendee at any time removed the automobile for more than three days from his then place of residence without the written consent of plaintiff that such would have the effect of a

default, and plaintiff could proceed as in a default. After the purchase, and without the knowledge and consent of plaintiff, Martin removed the automobile to Caruthersville, Missouri, and there, on January 15, 1919, he bought merchandise from defendant to the amount of $1262, and gave in payment his check on a bank in Memphis in that sum.  At the same time he gave defendant a written instrument called a bill of sale certifying that "I have this day delivered to J. W. Stephens one Buick and one Packard automobile to secure the payment of the sum of $1262, and if the same is not paid on or before January 17, 1919, said automobile shall be the absolute property of the said J. W. Stephens." The check went through the usual course, and was returned unpaid.  Defendant had no knowledge of plaintiff's claim.  He had the records of Pemiscot county examined, and found no lien, and was assured by Martin that there was no lien or claim on the automobile in question.  Martin had the automobile at the time of this deal in a garage in Caruthersville, and had authorized some repairs.  He turned over the automobile to defendant, and defendant had the repairs completed, and paid the bill, which was some over one hundred dollars.  Immediately on ascertaining that the automobile was in Caruthersville, plaintiff proceeded to recover it, and instituted this suit on February 1, 1919.

Both sides agree that under the facts the only question for decision on this appeal is the right of plaintiff to enforce in this State the terms and conditions of the conditional sale contract.  By the statute laws of Tennessee, which laws were introduced in evidence, plaintiff was not required to file or record the conditional sale contract in order to make it valid in that State as against a subsequent creditor or bona-facie purchaser without notice, and said contract was not filed or recorded in Tennessee.  Plaintiff contends that under the rule of comity the contract should be upheld in this State, and given the same force and effect as given by the laws of the State where the contract was made.  Defendant meets this contention by saying that the rule

of comity does not obtain as a matter of *right*, but goes more in the nature of grace or voluntary act on the part of the State recognizing or granting it.

In considering the question of comity it should be borne in mind that the recognition of foreign laws cannot be claimed as a matter of right, but only as a favor or courtesy, that the doctrine of comity is permitted and accepted in all civilized States from mutual interest and convenience, and a sense of the inconvenience which would otherwise result, and from moral necessity to do justice in order that justice may be done in return. [5 R. C. L. 910; Olmstead v. Olmstead, 216 U. S. 386, 30 S. Ct. 292, 54 U. S. (L. Ed.) 530, 25 L. R. A. (N. S.) 1292; Minor v. Caldwell, 37 Mo. 350.] In the recognition and enforcement of foreign laws courts are reluctant to overrule the positive law of the forum, and the court of the forum will not recognize and enforce a foreign law when to do so would prejudice the State's own rights of the rights of its citizens, or when to give force and effect to a foreign law, would be to contravene the positive policy of the law of the forum. [5 R. C. L. 99, and cases there cited.] But this same text supported by authorities, makes the observation, as a kind of caution, that it should be borne in mind that the mere variance of the law of two sovereignties does not in itself constitute a difference in policy.

We do not find that the courts of this State have ruled on the question involved here; but we have had similar or analogous questions. In Geiser Mfg. Co. v. Todd, 204 S. W. 297, we had under consideration the enforcement in this State of an Arkansas chattel mortgage, which was executed and recorded according to the laws of Arkansas, but the property had been moved into this State. We there found and stated that the great weight of authority is to the effect that a chattel mortgage, properly executed and recorded according to the law of the place where the mortgage is executed and the property is located, will if valid there, be held valid even as against creditors and purchasers in good faith in another State to which the property is moved by the

mortgagor without the knowledge and consent of the mortgagee, unless there is some statute in that State to the contrary, or unless the transaction contravenes the settled law or policy of the forum. A statute to the contrary means a statute expressly applying to contracts made out of the State, and not one which merely requires something different to that of the State where the contract was made. [5 R. C. L. 991; Adams v. Fellers, 88 S. C. 212, 70 S. E. 722, 35 L. R. A. (N. S.) 385.] We have no statute requiring that a foreign conditional sale contract, properly executed according to the laws of the State where made, be filed or recorded here in order to be good as against creditors and purchasers in good faith in this State, hence, the enforcement of plaintiff's contract in the case at bar will contravene no statutory law of our own State. We have a recording statute, section 2889, Revised Statutes 1909, affecting conditional sale contracts which provides that in all cases where personal property is sold to be paid for in whole or in installments on condition that the same shall belong to the purchaser when paid for, and that the title is to remain in the vendor until paid for, that in such cases such contract shall be void as to all subsequent purchasers in good faith and creditors, "unless such condition be evidenced by writing executed, acknowledged and recorded as provided in cases of mortgages of personal property."

In conditional sale contracts the weight of authority is to the effect that unless the law of the forum with reference to filing and recording applies to contracts made out of the State with reference to property subsequently brought into the State, compliance with the recording laws of the forum is unnecessary in order to protect the conditional vendor. [Adams v. Fellers, supra, 5. R. C. L. 991.] It is stated in 12 C. J. 451, that as a general rule the *lex loci contractus* controls as to the validity and effect of contracts of sale of personalty. In the note in 64 L. R. A. 833, where a number of cases are collected it is stated that the weight of authority seems to hold in accord with the rule with reference to chattel mortgages

that unless the local law of the State into which the property is moved with reference to filing or recording conditional contracts of sale, expressly applies to contracts made out of the State with reference to property subsequently brought into the State, compliance with the laws of the State into which the property is brought with reference to filing and recording is not necessary to protect the vendor after the removal of the property, unless it was contemplated at the time of the sale that the propty would be removed to the State. A discussion of the question here under consideration will be found in the note to Adams v. Fellers, 35 L. R. A. (N. S.) 385, supra, where a number of authorities are cited and quoted to the effect that a conditional sale of chattels good in the State were made, though not recorded there, because recording was not required, is enforceable in a State to which the chattels are subsequently removed, without the consent of the vendor, as against creditors or purchasers of the vendee, although recording of conditional sale contracts is required by the laws of the State to which the chattels are removed.

As stated we have no statute expressly applying to conditional sale contracts made out of the State, making plaintiff's conditional sale contract invalid in this State as against creditors and purchasers in good faith; then in the absence of such a statute should we hold this contract unenforceable here on the ground that it would contravene some settled policy of our law, and give an undue advantage to a citizen of another State over our own citizens? As nearly as we have a policy concerning the question here involved, is our policy with reference to the enforceability here of foreign chattel mortgages. As we have seen we give force and effect to foreign chattel mortgages. As we have seen we give force and effect to foreign chattel mortgages where the laws of the State where made are complied with and the property is subsequently moved into this State without the knowledge and consent of the mortgagee, although the mortgage is not filed or recorded here, and although citizens of our own State have innocently become involved. On principle

we can see no distinction in a chattel mortgage made and executed in all thnigs according to the law of the State where made, and where the property is, and where the ·parties reside, and a conditional sale made in the same way. In either case the mortgagee or the conditional vender, has done all that the laws of this State, require, and should the contract in one case be held valid and the other invalid? We think not. On the same principle that we allow the forcign chattel mortgage to be upheld here, we should allow the foreign conditional sale contract to be upheld here, and that principle is designated as the doctrine of comity.

These are cases holding contrary to the conclusion we have reached. [Sawyer v. Jesse French Piano & Organ Co., 52 S. W. 621; Willys-Overland Co. v. Chapman, 206 S. W. 978; Chambers v. Consolidated Garage Co., 210 S. W. 565.] In these cases the Texas Court of Appeals held that the foreign conditional sale contract, unrecorded but valid where made, reserving title in the vendor, could not be enforced in that State against innocent purchasers. These cases, it would seem, were decided on the theory that "the settled policy of Texas Jurisprudence has sternly frowned upon and set its face against the enforcement, against innocent purchasers for value, of secret undisclosed liens upon and reservations of title to personalty, the possession of which has been voluntarily surrendered, and the possessor clothed with apparent full and unincumbered title." All these cases mention the fact that the conditional sale contract was not recorded in Texas after the removal of the property there. Had the contract been recorded where made it would have been no more notice in law or fact to a citizen of Texas than if not recorded, because it is a well known principle recognized by all States that a law of a State has no extraterritorial effect. As we understand, the rule of comity in such cases as the one in hand, is not recognized and applied, because something has been done or not done according to the laws of the forum, but because the contract sought to be enforced was good where made, and will be enforced in other jurisdictions unless

to do so will contravene a statute expressly applying to contracts made out of the State of the forum, or the settled policy of the forum. Michigan refuses to give effect to a foreign chattel mortgage made and recorded in accordance with the laws where made. [Boydson v. Goodrich, 12 Mo. 913; Allison v. Teeters, 142 N. W. 340.] It is pointed out in Adams v. Fellers, supra, that Texas and Michigan are the only States that hold contrary to the result reached in the Adams case. By reference to Geiser Mfg. Co. v. Todd, supra, and cases there cited, it will be seen that our policy with reference to the enforcement of foreign chattel mortgages executed and recorded in accordance with the *lex loci* in contrary to that of Michigan.

Defendant cites Ruhe v. Buck, 124 Mo. 178, 27 S. W. 412, where it is said that ''the spirit of comity does not require that a nonresident shall be allowed a remedy which is by the policy of the State law denied to its own citizns.'' In that case it appears Mrs. Buck, a married woman, became the purchaser of a lot in Tarkio, Missouri, and held a bond for title from Perkins, the owner, until the balance of the purchase money was paid. At that time a married woman in Missouri was incompetent to make a valid contract at law, but under the laws of Dakota a married woman could contract as a *feme sole,* and sue and be sued as such. Under the name of O. W. Buck & Co., Mrs. Buck and her husband became indebted in Dakota, and the interest of herself and husband in the lot in Missouri was attached for this debt. After the attachment was levied, Mrs. Buck sold the lot to Thompson and Trout, who afterwards paid the balance of the purchase money to Perkins, and received a warranty deed from him. At that time a married woman was not subject to a suit by attachment in this State, and a judgment obtained against her in such a proceeding was a nullity, and neither could a married woman be then sued at law as a member of a mercantile firm. There the court in disposing of that case said: ''As already said, when this action was brought, this court had, by uniform decisions held that a married woman could not be sued by at-

tachment in actions at law in Missouri.  No such remedy was available in our courts in favor of resident creditors. Had any citizen of Missouri, on a contract made or to be performed in this State, proceeded by attachment at law against this real estate, no lien would have been created and no valid judgment could have been rendered against Mrs. Buck, and no purchaser for value would have been affected, but if plaintiff's contention is true, the fact that this claim originated in Dakota has changed all this and his attachment is as valid as if Mrs. Buck was a single woman.  But Mrs. Buck is still a married woman and there was no such exception, in our code of procedure, in favor of contracts executed beyond our borders when this suit was brought, and an attempt to enforce such a distinction out of a spirit of comity would create endless confusion.''

But in that case we had a statute as well as controlling decisions, and such is not the situation in the case at bar.  In Hughes v. Winkleman, 243 Mo. l. c. 92, 147 S. W. 994, our Supreme Court said: ''At very root, comity is courtesy.  In jurisprudence, however, comity is a kind of courtesy which, subject to exceptions, is administered by fixed rules of law and rises to the dignity of a legal right, as over against mere politeness in social intercourse.  Courtesy must give way to the law of the forum, where the latter on a rule of property in the State of the forum clashes with a rule of property in some other State, when the property is *real property-immovables,* (Italics ours) as in the case at bar.''  A reading of the case last cited will disclose that there is some significance in the italicized portions.

It is our conclusion that plaintiff's conditional sale contract is, under the facts here, enforceable in this State.  There is no dispute as to plaintiff's interest in the automobile.  On the date of the trial below the amount due on the unpaid notes was $1168.50.  Defendant gave bond and retained possession of the automobile.  The evidence shows that the automobile was worth more than plaintiff's claim against it, and plaintiff asks in the event its contract be held good here that the cause be reversed and remand-

ed with directions to enter up judgment in its favor for $1168.50 with interest from the date of the trial below. Since we have decided the law of the case in plaintiff's favor, and in view of this request, and the unchallenged facts as to value, we reverse and remand the cause with directions to the trial court to enter up judgment in favor of plaintiff for the sum of $1168.50 with interest at six per cent from November 2, 1919, the date of the trial below.

Sturgis, P. J., and *Farrington, J.*, concur.