## UNION SECURITIES CO. ET AL. v. ADAMS ET AL*
### (No. 1215; May 19, 1925; 236 Pac. 513.)

CONFLICT OF LAWS—COMITY—COURTS—FOREIGN LAWS CONTRARY TO POLICY OF FORUM—CHATTEL MORTGAGES—TEXAS MORTGAGE NOT UPHELD AGAINST WYOMING PURCHASER.

1. The laws of one state have ipso proprio vigore, no extra-territorial force, but can bind only its own subjects and others who may be within its jurisdictional limits, and any extraterritorial force they may have is result of comity.

2. Foreign laws will not be given effect when to do so would be contrary to settled policy of forum, or when effect would be injurious to state or its citizens.

3. In view of fact that courts of Texas hold that, where mortgaged property is removed to that state from other states and purchased by an innocent purchaser in that state, owner of mortgage lien is not protected, though mortgage was duly recorded where it was given and lien was valid in state of origin, *held* that, as principle of comity implies mutuality and reciprocity, and will not be extended where none is granted in return, a mortgage lien obtained in Texas and valid in such state will not be upheld in Wyoming, after property covered by such mortgage had been removed and sold to an innocent purchaser in Wyoming.

*NOTE—See Headnotes—(1) 12 C. J. pp. 434, 435; (2) 12 C. J. pp. 439, 440, 15 C. J. p. 1181; (3) 12 C. J. p. 441.

APPEAL from District Court, Natrona County; ROBERT R. ROSE, Judge.

Action by the Union Securities Company and another against J. C. Adams and others. Judgment for plaintiffs, and defendants appeal.

*E. Paul Bacheller* for appellants.

The Texas mortgage would be valid here, Yund v. Bank, 14 Wyo. 81, under the principle of comity between the states, Harris v. Sterry, 5 Cranch. 289; Handley v. Harris (Kans.) 29 Pac. 1,145, 11 C. J. 425; if valid where made; Corbett v. Littlefield, 47 N. W. 581; Allison v. Teeters (Mich.) 142 N. W. 345; Best v. Bank (Tex.) 141 S. W. 334; Snyder v. Yates (Tenn.) 79 S. W. 796; Garage Co. v. Chambers, 231 S. W. 1072; Willys Co. v. Chapman, 206 S. W. 978; Studebaker Co. v. Mau. (Wyo.) 80 Pac. 51; but Texas does not recognize the doctrine of reciprocity; Best v. Bank, supra; as defined by the authorities, 12 C. J. 441; which is an extension of the law of comity, 5 R. C. L. 910; recognized here by statute, 2831 C. S.; see as to action for personal injury Wabash Co. v. Fox (Ohio) 59 N. E. 888, and as to mortgages, Bank v. Sutherlin (Nebr.) 141 N. W. 827; re Nelson & Bro. 149 Fed. 590. Texas has refused to recognize the principle of comity in cases of this class, and this judgment should be reversed.

*Durham & Lowey* for respondents.

Only four states refuse to recognize the rule of comity, Miles v. Oden (La.) 19 Am. Dec. 177; Allison v. Teeter (Mich.) 142 N. W. 340; County v. Carr, 15 Pac. 346; and the State of Texas as shown by appellant's brief; the other states are in substantial accord with the principle of comity including Wyoming in Yund v. Bank, 14 Wyo. 81 and Studebaker Co. v. Mau. 13 Wyo. 358. The protection given mortgagee under the rule heretofore followed by this court will far outweigh any benefit derived by retaliating against the State of Texas. The purchaser in this case made no investigation, and is not in fact an innocent purchaser; it

is respectively submitted that the rule in Yund v. Bank should be applied.

BLUME, Justice.

It appears, from a stipulation of facts herein, that on January 30, 1923, one J. C. Adams purchased from the Wroten-Hundley Motor Company, a Texas corporation, one of the plaintiffs below, one certain Dodge automobile. Adams paid some cash and on the same day executed a chattel mortgage to the Union Securities Company, another Texas corporation, one of the plaintiffs below, to secure a note, executed on the same day for $772, which represented the balance of purchase price for said automobile. The chattel mortagage was duly filed for record in compliance with the laws of the state of Texas, on February 3, 1923, where said automobile was located at that time, and said mortgage is a valid, subsisting lien on said automobile in the state of Texas. On April 20, 1923, Adams made default in said mortgage and on or about said date removed said automobile to the state of Wyoming, where he sold it to one Evans, who in turn sold it to Clarence Fisch, defendant in this action. Said chattel mortgage provided that the mortgagee might take possession of the automobile at any time and any place upon default of the payment of said note. Said mortgagor agreed not to remove the automobile from the state of Texas without the written consent of the mortgagee, and no such consent was ever given. Fisch was a purchaser for value without actual notice of a mortgage on the car or of any prior lien thereon. Said mortgage was never filed for record in the state of Wyoming.

The action herein was instituted by said Union Securities Company and said Wroten-Hundley Motor Company, as plaintiffs, against Clarence Fisch, et al., defendants, to recover the possession of said automobile or the value thereof. The trial court found in favor of said plaintiffs and entered judgment against the defendant Fisch and his surety for the sum of $701.51, from which judgment the defendant

Fisch, appellant herein, has appealed. The only question involved in this case is as to whether or not the rights of Fisch are subject to the rights of respondents under said mortgage; and that, in turn, depends upon the ultimate point whether the lien which respondents had under the laws of Texas must be upheld in Wyoming after the property covered by said mortgage was sold to an innocent purchaser, a citizen of this state.

This court held in the case of Studebaker Brothers Co. v. Mau, 13 Wyo. 358, 80 P. 151, 110 Am. St. Rep. 1001; Id. 14 Wyo. 68, 82 Pac. 2, that a contract of conditional sale made in Utah and valid in that state as to all persons, though not filed of record, remained valid after the property covered thereby was removed to this state and sold to an innocent purchaser. And we held in the case of Yund v. First National Bank, 14 Wyo. 81, 82 Pac. 6, that where a chattel mortgage was duly filed for record in the state of Oklahoma and the property covered by said mortgage was subsequently removed to this state, the mortgage remained valid as against an innocent purchaser in this state. These cases are in accordance with the weight of authority (11 C. J. 424), and would ordinarily be decisive herein. It appears, however, that the courts of the state of Texas, including the highest court of that state, give no effect to the registration laws of other states and hold that where mortgaged property is removed to the state of Texas from other states and purchased by an innocent purchaser in that state, the owner of the mortgage lien is not protected, though the mortgage was duly filed for record where it was given, and though the lien thereunder is valid and protected in the state of its origin. Closby v. Huston, 1 Tex. 204; Best v. Bank (Tex. Civ. App.), 141 S. W. 334; Farmer v. Evans, (Tex. Civ. App.), 192 S. W. 342; Farmer v. Evans (111 Tex. Sup. Ct. 283) 233 S. W. 101; Consolidated Garage Co. v. Chambers, (111 Tex. Sup. Ct. 293), 231 S. W. 1072; Willis Overland Co. v. Chapman, (Tex. Civ. App.) 206 S. W.

978.  And we must determine what effect such holding has on the case at bar.

It is fundamental that the laws of Texas have, ipso proprio vigore, no extra-territorial force.  So far as their effect is concerned, every other state must be regarded as a separate sovereignty to the same extent as though it were a foreign nation.  The laws of one state can bind only its own subjects, and others who may be within its jurisdictional limits.  Whatever extra-territorial force they have, is the result, not of any original power to extend them abroad, but of that mutual respect, called comity, which from motives of public policy, other nations or states are disposed to yield to them, giving them effect with a wise and liberal regard to enlightened self interest, common convenience and mutual benefits and necessities.  Story, Conflict of Laws, Sec. 7; 5 R. C. L. 908.  It is undoubtedly a rule of the common law that effect should be given to the laws of other states to the extent and within the limits mentioned; but foreign laws will not be given effect when to do so would be contrary to the settled policy of the forum, or, generally speaking, when the effect would be injurious to the state or its citizens.  5 R. C. L. 908; 12 C. J. 434, 439, 440.  It was said in Rosenbaum v. Dawes, 77 Ill. App. 295, that in many cases—and we might add, in most cases—the rule that citizens of one state are bound by constructive notice of a chattel mortgage executed and recorded in another state, necessarily and inevitably operates to the detriment of such citizens.  We held in the Yund case that notwithstanding that fact the lien under an Oklahoma mortgage was protected in this state.  Nevertheless, such lien is recognized only by reason of comity.  11 C. J. 425; Studebaker Bros. Co. v. Mau, supra.  And inasmuch as it clearly appears from the repeated decisions of the courts of Texas that the lien of a Wyoming mortgage, duly filed of record in the county where it is executed, in accordance with the laws of this state, would not be protected, if the property covered thereby should be removed to Texas, without the consent of the mort-

gagee, and sold to an innocent purchaser, it devolves upon us to determine whether the doctrine of comity involves and implies reciprocity, or whether it is our duty to apply that doctrine regardless of that fact. The duty, or comity, of one state or nation to give effect to the municipal laws of another state or nation, that is to say, the laws originating in such state or nation, is dealt with under what is generally called private international law, or conflict of laws. It is part of the great body of international law (5 R. C. L. 908), and public as well as private international laws are based, fundamentally, upon the doctrine of comity. In the case of In Re McCoskey's Estate, 22 Abb (N. C.) 20, 6 Dem. Sur. 438, 1 N. Y. S. 782, it was said that ''comity means, generally, reciprocity, and there are no reciprocal relations on this subject (taxation) between New York and Massachusetts.'' The subject was considered in the case of The Santa Cruz, 1 C. Robinson 50, 165 Eng. Reprint 92, decided in 1798. In that case the question was as to whether a Portugese ship recaptured from the French should be restored to the Portugese owner or condemned as the property of the recaptor. Portugal was a friendly nation. The court held that the case must be decided upon the principle of reciprocity, saying in part:

''That obligation (of applying a rule of international law) could arise only from a reciprocity of practice in other nations; for from the very circumstances of the prevalence of a different rule among other nations, it would become not only lawful, but necessary, to that one nation, to pursue a different conduct; for instance, were there a rule prevailing among other nations, that the immediate possession, and the very act of capture, should divest the property from the first owner, it would be absurd for Great Britain to act towards them on a more extended principle and to lay it down as a general rule, that a bringing infra praesidia, though probably the true rule, should in all cases of recapture be deemed necessary to divest the original proprietor

of his right.   The effect of adhering to such a rule would be gross injustice to British subjects; and a rule, from which gross injustice must ensue in practice, can never be the true rule of law between independent nations; for it cannot be supposed to be the duty of any country to make itself a martyr to speculative propriety, were that established on clearer demonstration than such questions generally admit. Where mere abstract propriety therefore is on one side, and real practical justice on the other, the rule of substantial justice must be held to be the true rule of the law of nations between independent states.   *   *   *   I understand it (the rule) to be clearly this, that the maritime law of England, having adopted a most liberal rule of restitution on salvage, with respect to the recaptured property of its own subjects, gives the benefit of that rule to its allies, till it appears that they act towards British property on a less liberal principle; in such a case it adopts their rule and treats them according to their own measure of justice.   *   *   * I conceive this principle of reciprocity is by no means peculiar to cases of recapture; it is found also to operate in other cases of maritime law.''

The principle of reciprocity above mentioned has also been applied in like cases by the Government of the United States and by France.   2 Hyde, International Law, page 508, and note to the case of The Santa Cruz, supra.   The case of Sheddon v. Patrick et al., 11 D. 1333, 1 Macqueen 535, 9 Scotts Revised Reports 396, involved the recognition of American marriage-laws in Scotland, and Sir Romilly arguing the point stated as follows:

''The comity should, at least, in substance be reciprocal between the countries (case of Santa Cruz 1 Robin. Adm. Reps. 63) ; for, to use the words of Valin, if there be no reciprocity, it destroys that equality of justice which states owe to each other (Valin lib. III tit. IX, Art. 10).''

In Story on Conflict of Laws, Section 35, the rule of reciprocity is considered fundamental and is stated as follows:

"The true foundation, on which the administration of international law must rest, is, that the rules which are to govern are those which arise from mutual interest and utility, from the sense of inconveniences which would result from a contrary doctrine, and from a sort of mutual necessity to do justice, in order that justice may be done to us in return."

The same language was used in Gooch v. Faucett, 122 N. C. 270, 29 S. E. 362, 39 L. R. A. 835; Cannaday v. R. R. Co., 143 N. C. 439, 55 S. E. 836, 8 L. R. A. (N. S.) 939, 118 A. S. R. 821; Parker-Harris Co. v. Stephens, 205 Mo. App. 373, 378, 224 S. W. 1036, 8 L. R. A. (N. S.) 939. In the case of Wabash R. Co. v. Fox, 64 Ohio St. 133, 145, 59 N. E. 888, 890, 83 Am. St. Rep. 739, the court said:

"Our statute rests upon the ground of reciprocity which is based upon the idea of comity, and the very essence of reciprocity implies that each state, as to the subject matter, shall have and enforce identical laws."

In the case of King v. Sarria, 69 N. Y. 24, 31, 25 Am. Rep. 128, the court said:

"It is the necessary intercourse of subjects of independent governments, which gives rise to a sort of compact, that their municipal institutions shall receive a degree of reciprocal efficacy and sanction within their respective dominions. It is not the statutes of one community which extend their controlling power to the territories of another; it is the sovereign of each who adopts the foreign rule, and applies it to those particular cases in which it is found necessary to protect and cherish the mutual intercourse of his subjects, with those of the country whose laws he adopts."

In the case of Holmes v. Remsen, 20 Johnson (N. Y.) 229, 263, (11 Am. Dec. 269), the court said:

"As a general proposition, I would extend this comity to every nation, whose system of jurisprudence, and whose local vicinity, give assurance that it will be reciprocated with fidelity and convenience."

In the case of McEwan v. Zimmer, 38 Mich. 765, 769, 31 Am. Rep. 332, Justice Cooley said:

"True comity is equality; we should demand nothing more and concede nothing less."

In the case of Bradstreet v. Neptune Insurance Co., 3 Summ. 600, 608, Federal Case 7193, the court said:

"If a civilized nation seeks to have the sentences of its own courts held of any validity elsewhere, they ought to have a just regard to the rights and usages of other civilized nations and the principles of public and national law in the administration of justice."

In the case of Hilton v. Guyot, 159 U. S. 113, 15 Sup. Ct. 139, 166, 40 L. Ed. 95, the question was as to what effect should be given by the courts of the United States to a judgment rendered in France. The defendants in their answer pleaded that the tribunals of the republic of France give no force and effect within the jurisdiction of that country to the judgment duly rendered by courts of competent jurisdiction of the United States against citizens of France, after proper personal service of the process of those courts has been made thereon in that country. Upon the trial of the case the defendant offered to prove these facts, but the trial court rejected the testimony. The supreme court of the United States held that this was error and that the evidence should have been admitted, and held that a judgment rendered in France would be treated in the United States in

the same manner as a judgment rendered in the United
States is treated in France; the court saying in part:

"In holding such a judgment, for want of reciprocity,
not to be conclusive evidence of the merits of the claim, we
do not proceed upon any theory of retaliation upon one per-
son by reason of any injustice done to another, but upon
the broad ground that international law is founded upon
mutuality and reciprocity, and that by the principles of
international law recognized in most civilized nations, and
by the comity of our own country, which it is our judicial
duty to know and to declare, the judgment is not entitled
to be considered conclusive."

The decision contains an extensive review of the subject
as applied to judgments rendered in other countries, and
from that review the following facts appear:    Holland
gives the same effect to the laws of another country, which
is extended by the principles of comity to the laws of Hol-
land.    Thus its tribunals give effect to the English bank-
rupt laws, when duly proved, because the bankrupt laws of
Holland are recognized by England.    Belgium has adopted
the same rule.    In Denmark the courts require reciprocity to
be shown before they will execute a foreign judgment.    That
is true also in Sweden.    In the empire of Germany, the
judgment of the several states thereof are mutually execut-
ed, and the principle of reciprocity prevails as to the judg-
ments of other countries.    No foreign judgment is executed
if reciprocity does not exist.    That rule also prevails in
Switzerland, Russia, Poland, Austria, Egypt, Mexico and
South America.

Adherence to the principles announced in Hilton v.
Guyot, supra, had previously been given in the case of
Burnham v. Webster, 1 Woodb. & M. 172, 175, 179, Federal
Case No. 2179, where the court said of foreign judgments:.

."When offered and considered elsewhere, they are ex
comitate, treated with respect, according to the nature of:

the judgment and the character of the tribunal which rendered it, and the reciprocal mode, if any, in which that government treats our judgments.   *   *   *   Nor can such comity be asked for the judgments of another nation, which, like France, pays no respect to those of other countries."

In the case of Rutledge v. Krauss, 73 N. J. Law 397, 401, 63 A. 988, 989, the question was as to whether or not a person extradited from the state of New York could be arrested for another crime than that for which he was extradited, and the court said:

"The defendant in the case before us was extradited from the state of New York, and we have seen that the highest court of that state holds that a person thus surrendered is not entitled in that state to immunity from arrest for other crimes or upon civil process. Therefore, even the rule of comity between states, if it existed in such a matter, would not require us to set aside the order of arrest in this case. Comity means that we will do by courtesy what they would do under like circumstances with a citizen of our state."

In the case of In Re John L. Nelson & Bro. Co., (D. C.) 149 Fed. 590, the question involved was as to whether the property attached by citizens of New York should be turned over to a receiver for the benefit of creditors appointed in the state of Illinois. The court considered the question of comity and found that it was contrary to the policy of Illinois law, as declared by the supreme court of that state, to allow the property or funds of a non-resident debtor to be withdrawn from that state before the creditors in Illinois had been paid. And the court said:

"It thus appears that, were the situations reversed, a New York assignee would not be permitted to recover funds of his assignor situated in Illinois as against attaching creditors in that state. The rule of granting to assignments for the benefit of creditors extra-territorial vitality rests upon

principles of comity.   *   *   *   It involves reciprocity, and it appears to me to be clearly against the policy of any state to grant to the citizens of another jurisdiction a privilege from which its own citizens are debarred by the repeated decisions of the highest court of said jurisdiction. I am therefore of the opinion that, upon principles of public policy, the claims of the attaching creditors are to be preferred to that of the assignor.''

In the case of Fisher v. Hyde, 3 Yeates (Penn.) 256, the question was as to whether or not a discharge under the bankrupt and insolvent laws of the state of New York should be given effect in the state of Pennsylvania. The opinion on that point is as follows:

''The court said, they well recollected the circumstances disclosed in Nixon v. Young, and unless it clearly appeared that the courts of New York paid regard to discharges under our bankrupt and insolvent laws, they declared that on principles of reciprocity they could not respect discharges under their laws. At the instance of defendant's counsel, they gave further time to make inquiries as to this point. The argument being resumed this term, and it being admitted, that by the practice of the courts in New York, no regard was paid to certificates of bankruptcy under the laws of Pennsylvania, the court discharged the rule and directed that the defendant should give bail.''

In other words the Pennsylvania court refused to give effect to the discharge of bankruptcy granted by the court in New York, on account of want of reciprocity. In the case of Best v. Bank, (Tex. Civ. App.) 141 S. W. 334, 337, the court, speaking of the registration laws relating to chattel mortgages and the effect thereof in the state of Texas, took occasion to make the following statement:

''And we take it is not the duty of the courts of this state to extend to a citizen of another state a right or privilege

that would not be extended to one of our own citizens in a matter of this kind.''

We have reviewed most of the authorities which we have been able to find upon the subject at hand and from this review it clearly appears that the principle of comity is throughout the civilized world based upon mutuality and reciprocity, and where it appears that no such reciprocity is extended, none is, generally, granted in return. It may be that in actions of tort which are transitory, which involve only the original parties to the transaction and which are based upon a wrong that perhaps ought not to be condoned, the rule should be otherwise. See Wabash R. Co. v. Hassett, 170 Ind. 370, 83 N. E. 705. But in the case at bar injury would be inflicted upon an innocent purchaser, a citizen of the state of Wyoming, if the lien of the mortgage in question were upheld. Such lien, as hereinbefore shown, can be sustained only upon the principle of comity. It cannot be done upon any other principle of law. We are loath to restrict that principle. We believe that it should be applied wherever it is reasonably possible to do so, and we took occasion recently in the case of Continental Oil Co. v. American Co-operative Ass'n., (Wyo.) 228 Pac. 503, to apply it to a case in which it had not previously been applied in this state. Living in a Union of forty-eight states, obedient to the same flag, speaking the same language, having largely the same customs, and following the same pursuits, it should be the policy of every state to extend rather than to limit the doctrine of comity. But we must necessarily pause, and hesitate to apply it in a case like that at bar where we can find no possible justification for it, and where the decision, necessarily resulting in an injury to a citizen of this state, would find no basis on any sound principle of law. Let us bring the case nearer home. Suppose one of our neighboring sister-states should refuse to reciprocate in treating as valid Wyoming mortgages duly filed of record in accordance with our laws, as against innocent purchasers

in that state. We have no doubt that such holding would have a tendency to increase unlawful removals of mortgaged automobiles and other personal property from this state to that. If we should still continue to apply the principle of comity without reciprocity, we should not alone injure citizens of this state, whose protection is our first duty, but we should also, indirectly, encourage such unlawful removals and dishonest conduct. That, so far as in us lies, we shall not do.

We are constrained, accordingly, to hold that the doctrine applied in the Yund case, supra, cannot be extended to this case.

It follows from what we have said that the judgment of the district court must be reversed and the case remanded with direction to enter judgment for the appellant herein and to make such other order as may be proper, not inconsistent with this opinion. It is accordingly so ordered.

*Reversed and Remanded.*

POTTER, Ch.J., and KIMBALL, J., concur.