**ROBBINS v. BOSTIAN.**

**In re PEAIRS–LYNCH STONE CO.**

No. 12419.

Circuit Court of Appeals, Eighth Circuit.

April 26, 1943.

Rehearing Granted July 26, 1943.

J. W. House and D. D. Panich, both of Little Rock, Ark., for appellant.

Frank P. Barker, of Kansas City, Mo. (Winger, Reeder & Barker, of Kansas City, Mo., on the brief), for appellee.

Before GARDNER, JOHNSEN, and RIDDICK, Circuit Judges.

RIDDICK, Circuit Judge.

On June 3, 1941, the appellant Robbins, a resident of Arkansas, sold a rock crusher located at Fort Smith, Arkansas, to Peairs-Lynch Stone Company, a Missouri corporation domiciled at Kansas City, Missouri, and engaged in the business of crushing and supplying rock for construction work in Arkansas, Missouri, and Nebraska. In the contract of sale appellant reserved title to the rock crusher until the full payment of the purchase price.

Fifteen days after delivery of the rock crusher, the stone company shipped it to Table Rock, Nebraska. The crusher was of such size that it could only be moved by railroad, and while the appellant knew that the crusher had been moved from Fort Smith, he had no information concerning its destination. The parties had no definite agreement as to the place at which the rock crusher would be used by the stone company, although the contract provided that the crusher should not be removed from the county where first used by the purchaser without notice to the vendor. The vendor· knew that the vendee had work in Nebraska as well as in Missouri and Arkansas. Apparently he assumed, without being explicitly so advised, that the rock crusher would be used on the Arkansas work. On the other hand, the vendee was under the impression that it might use the crusher in any state in which it had work.

The stone company failed to pay the first installment of the purchase price for the crusher due on August 1, 1941. Appellant was ill at that time, but on or about the first of September, he communicated with the officials of the stone company at Kansas City, demanding payment, and learned that the rock crusher had been taken to Table Rock, Nebraska. He continued to press for payment until late in October 1941, when he was visited in Arkansas by the officials of· the stone company, who explained that because of de-lays in the Nebraska work beyond their control, they had not been able to meet the payments on the contract.· They requested an extension of time, which the vendor granted. The work at Table Rock was closed down on December 12, 1941, the stone company having received a small part of the payments anticipated from that work, and having failed to pay any of the deferred installments owed on the purchase price of the crusher. On January 22, 1942, the stone company filed a voluntary petition in bankruptcy in the district court for the western district of Missouri at Kansas City.

The appellant presented to the bankruptcy court his petition for reclamation, relying on the reservation of title in his conditional sales contract. The trustee opposed the petition, asserting a superior title by virtue of § 70, sub. c of the Bankruptcy Act, 11 U.S.C.A. § 110, sub. c, and the statutes of Nebraska, invalidating a reservation of title in an unrecorded conditional sales contract, as against purchasers, judgment creditors, or mortgagees of the vendee without notice. Compiled Statutes of Nebraska (1929) § 36-208, as amended, C.S.Supp.1941, Laws of Nebraska 1941, p. 296, c. 69.

Under the provisions of § 70, sub. c, of the Bankruptcy Act, where a bankrupt vendee, at the time of his petition, has property in his possession under a conditional sales contract by which title is reserved in the vendor, the trustee will prevail over the reservation of title in the vendor if a judgment creditor of the bankrupt could have prevailed under the applicable state law. White v. Steinman, 2 Cir., 120 F.2d 799; In re Pointer Brewing Co., 8 Cir., 105 F.2d 478, 479; 4 Collier on Bankruptcy, §§ 70.49, 70.59 (14th Edition). It is not necessary to the trustee's right that there be an actual creditor of the bankrupt holding a superior lien, nor is it necessary that there be an actual creditor who could have secured such a lien. Albert Pick & Co. v. Wilson, 8 Cir., 19 F. 2d 18; Brandes v. Barber, 8 Cir., 13 F.2d 65. The status of the trustee under the section of the Bankruptcy Act cited is governed by that Act and presents a federal question. But the extent of the rights conferred by the Bankruptcy Act on the trustee is controlled by the substantive law of the jurisdiction governing the property in question. Commercial Credit Co. v. Da-

vidson, 5 Cir., 112 F.2d 54; Collier on Bankruptcy, supra.

The question is whether the reservation of title to personal property in a conditional sales contract made in Arkansas, where the property was located at the time of the sale and where the reservation of title was valid, would be sustained in Nebraska, where such reservations of title are void as against judgment creditors without notice. The referee's decision that the reservation of title in the vendor would not be recognized in Nebraska as against the trustee, who by statute occupies the position of a judgment creditor, was approved by the district court.

The general rule upon the question has been stated by this court as follows: "The general consensus of judicial opinion seems to be that when personal property, which at the time is situated in a given state, is there mortgaged by the owner, and the mortgage is duly executed and recorded in the mode required by the local law, so as to create a valid lien, the lien remains good and effectual, although the property is removed to another state, either with or without the consent of the mortgagee, and although the mortgage is not re-recorded in the state to which the removal is made. The mortgage lien is given effect, however, in the state to which the property is removed, solely by virtue of the doctrine of comity. Hence a state may by appropriate legislation decline to observe the rule of comity, and may require all mortgages affecting personal property which is situated therein or brought therein to be there recorded, as a condition precedent to the recognition of their validity in that state. But the statutes of a state which prescribe how mortgages on personal property shall be executed and recorded are generally, if not universally, regarded as speaking with respect to mortgages made within the state upon property there situated, and as having no reference to personalty brought within the state which is at the time incumbered with a valid lien created elsewhere." Shapard v. Hynes, 8 Cir., 104 F. 449, 452, 453, 52 L.R.A. 675, citing Hall v. Pillow, 31 Ark. 32; National Bank of Commerce v. Morris, 114 Mo. 255, 21 S.W. 511, 19 L.R.A. 463, 35 Am.St.Rep. 754; Cool v. Roche, 20 Neb. 550, 556, 31 N.W. 367.

The rules controlling in cases of this character as to conditional sales contracts and as to chattel mortgages are analogous.

A limitation upon the general rule is recognized in cases in which the parties, at the time of the contract imposing a lien or reserving title, intend that the personalty shall be removed to another state, there to acquire a permanent situs. In such cases, on removal, the lien or reservation is not valid as against innocent third parties in the absence of a compliance with the registration laws of the state to which the property is removed. The reason for the limitation is obvious. Since the parties intend that the personalty shall become a part of the property in the state in which the parties place it, they must be held to have contracted with reference to the laws of that state. The Nebraska case of Bradley & Co. v. Kingman Implement Co., 79 Neb. 144, 112 N.W. 346, is illustrative of cases falling within this category. But since there was no finding below of such an intention or agreement of the parties to the sale involved here, cases of this character are not in point.

A like result may, but does not always, occur where, after execution of the contract, the personalty involved is removed to another state, with the consent of the conditional vendor or mortgagee. If, in such cases, the statutes of the state to which the chattel is removed require a recording of the contract in that state, that is to say, if the statutes of the state to which removal is made apply to contracts executed in other states, compliance with them is necessary to a preservation of the vendor's reservation of title. Restatement, Conflict of Laws, §§ 270–277. But if the statutes of the state to which the property is removed have no extraterritorial application, the effect of the consent of the vendor or mortgagee to removal will depend upon whether the parties intended or permitted the personalty to acquire more than a temporary situs in the second state. A temporary or transient removal is not sufficient to invalidate a contract valid in the state of its execution, for failure to have it recorded in the state to which the chattel involved is removed. Yellow Mfg. Acceptance Corp. v. Rogers, 235 Mo.App. 96, 142 S.W.2d 888; Bankers' Finance Corp. v. Locke & Massey Motor Co., 170 Tenn. 28, 91 S.W.2d 297, 299; Flora v. Julesburg Motor Co., 69 Colo. 238, 193 P. 545; Lane v. J. E. Roach's Banda Mexicana Co., 78 N.J.Eq. 439, 79 A. 365.

The case of United Const. Co. v. Milam, 6 Cir., 124 F.2d 670, is an example of cases

in which a reservation of title in a conditional sales contract was held invalid because, after the execution of the contract in one state, the subject of the contract was removed to another state, under circumstances showing the intention of the vendee, with the consent of the vendor, to give it a permanent situs in that state. The contest there was between the conditional vendor and the trustee of the conditional vendee's estate in bankruptcy. The sale involved barges which were delivered to the conditional vendee in Illinois under a contract dated April 9, 1937. The barges were removed to Kentucky and placed in operation on the Barren River in that state. On the following May 3rd, the purchaser informed the seller of this fact and in June he advised the seller that the barges would remain in operation in Kentucky. In the meantime the vendor and the vendee had effected marine insurance on the barges, restricting their use to rivers within the State of Kentucky. The court was of the opinion that the seller had acquiesced in the permanent removal of the barges to Kentucky. While the court does not comment in its opinion upon the permanency of the location in Kentucky, that fact, as well as the seller's acquiescence in it, sufficiently appears from the court's statement of the case. The Kentucky case, relied on as sustaining the invalidity of the foreign contract for the failure of the conditional vendor to record it in accordance with the requirements of the Kentucky statute, held that the conditional vendor's lien is lost by such failure where the property sold in another state is removed to Kentucky with the knowledge of the vendor that its permanent situs is to be in that state. Johnson v. Sauerman Bros., Inc., 243 Ky. 587, 49 S.W.2d 331, 332. In stating the facts upon which it based its decision the Kentucky court said: "The evidence, we think, shows that Sauerman Bros. well knew that the machinery would remain in Tennessee only a brief period of time, and that its permanent situs would be in Kentucky—at least for a period beyond when its purchase-money notes would become due." And see Fry Bros. v. Theobold, 205 Ky. 146, 265 S.W. 498, in which the Kentucky Court of Appeals applied the rule stated in Shapard v. Hynes, supra, in favor of a vendor whose title depended upon a conditional sales contract executed in Tennessee, as against an innocent purchaser who bought the property after it had

been removed to Kentucky, although in Kentucky conditional sales contracts are not recognized.

The applicable registration statute of Nebraska does not, expressly or by implication, apply to a conditional sales contract executed in another state concerning property in that state. Farmers' & Merchants' State Bank v. Sutherlin, 93 Neb. 707, 141 N.W. 827, 46 L.R.A.,N.S., 95, Ann.Cas. 1914B, 1250. If, therefore, the trustee is to prevail over the conditional vendor, it must be, on the ground that the conditional vendor consented to the removal of the subject of the conditional sale from Arkansas to Nebraska, in circumstances justifying the inference that it should there acquire a situs more or less permanent. Farmers' & Merchants' State Bank v. Sutherlin, supra, and Pennington County Bank of South Dakota v. Bauman, 87 Neb. 25, 126 N.W. 654, are said to require this holding here.

We cannot agree that the opinion in either of the Nebraska cases mentioned may properly be given the literal interpretation which the trustee's argument demands. In the Pennington County Bank case the owner of livestock, located in South Dakota, mortgaged them to a bank in that state. Later, with the knowledge of the bank, he shipped the livestock to New York. While the shipment was enroute to its destination, it was attached in the State of Nebraska by a creditor of the mortgagor. The mortgagee brought replevin in a Nebraska court. On the first trial of the case, 81 Neb. 782, 116 N.W. 669, the question was whether the bank, as the mortgagee, without either possession or the right to possession of the property mortgaged, could maintain a suit in replevin. The Nebraska court held that it could not. On a rehearing the court affirmed its former decision but, on the second hearing, the defendant advanced for the first time the question of the effect of the Nebraska statute requiring the recording of chattel mortgages. The South Dakota mortgage had not been recorded in compliance with the Nebraska statute. The court, in passing, noted this new contention, and, after having affirmed its original holding, added that the South Dakota mortgagee, having consented to the removal of the mortgaged property to Nebraska, could not recover the mortgaged property from an attaching creditor since, under the Nebraska recording statute, the lien of the attaching

creditor was superior to that of a mortgagee under an unrecorded mortgage. The sole authority given for this holding was Snyder v. Yates, 112 Tenn. 309, 79 S.W. 796, 64 L.R.A. 353, 105 Am.St.Rep. 941, a case since expressly repudiated by the Tennessee court. Newsum v. Hoffman, 124 Tenn. 369, 137 S.W. 490; Bankers' Finance Corp. v. Locke & Massey Motor Co., supra. Moreover, the point was not necessary to the decision of the Pennington County Bank case, as the Nebraska court pointed out in Farmers' & Merchants' State Bank v. Sutherlin, supra. And since the presence of the livestock in Nebraska was temporary and transient, without the intent of the mortgagor or mortgagee that it acquire a situs there, the decision involved here is contrary to the overwhelming weight of authority in other states. In view of the Nebraska court's comment in the Sutherlin case, we are of the opinion that this decision may not be accepted as conclusive or even persuasive upon the law of Nebraska.

In the Sutherlin case the Nebraska court had before it the question of the relative rights under Nebraska law of a Kansas mortgagee and an innocent purchaser of the mortgaged property in Nebraska, where the mortgage had never been placed of record. It was stipulated in the case that the mortgaged chattel had been removed from Kansas, where it was at the time of the execution of the Kansas mortgage, to Nebraska, without the consent of the mortgagee. The Nebraska court sustained the title of the Kansas mortgagee. It applied to the situation before it the general rule as stated in Shapard v. Hynes, supra. After noting that if the facts in the case were reversed, the lien of a Nebraska mortgagee would be sustained by the courts of Kansas as against the claims of an innocent Kansas purchaser, the court said [93 Neb. 707, 141 N.W. 829, 46 L.R.A.,N.S., 95, Ann.Cas.1914B, 1250]: "The principles of comity should apply equally well both north and south of the Kansas-Nebraska line, and since our sister commonwealth has accorded to our citizens the right to follow property upon which they hold a lien, it would be but a poor return if we failed to accord the same right to the citizens of Kansas."

The opinion discloses that the innocent Nebraska purchaser relied on the prior decision in the Pennington County Bank case.

But the court pointed out that the decision in question was really based upon another ground. It said that the Pennington County Bank case was distinguishable from the case before it on the ground that in the first case the mortgagee had consented to the removal of the property mortgaged to Nebraska. But the effect of the mortgagee's consent to remove the mortgaged property was not involved in the case before the court, since it was agreed that the removal had been accomplished without the mortgagee's consent. The case cannot be accepted as authority for the proposition that any removal with the consent of the mortgagee, however incidental and temporary in character, is effective to divest him of his lien. The case under discussion is the last Nebraska decision bearing on the question before us. The most that can be said of it is that it recognizes the rule of Shapard v. Hynes, supra, as generally controlling in Nebraska and that it explicitly holds that by comity Nebraska will accord to a foreign mortgagee the same rights, in reference to property brought into Nebraska encumbered by a lien, as the state of his residence grants Nebraska mortgagees in the same circumstances. It does not hold that a foreign mortgagee loses his lien to a Nebraska judgment creditor by consenting to the temporary location of the mortgaged chattel in Nebraska.

It would appear from the words of the Nebraska court in the case under discussion, that the principle of reciprocity among states is an important, if not a controlling element in the rule of comity as applied by that court. For a discussion of reciprocal comity see Forgan, et al v. Bainbridge, 34 Ariz. 408, 274 P. 155, 158; Union Securities Co. v. Adams, 33 Wyo. 45, 236 P. 513, 50 A.L.R. 23, 24 and annotation with reference to the Sutherlin case. It is admitted that the appellant's reservation of title was good in Arkansas and, apparently, with the situation reversed, the courts of that state would sustain a Nebraska mortgagee as against claims of its residents. Creelman Lumber Co. v. Lesh & Co., 73 Ark. 16, 83 S.W. 320, 3 Ann.Cas. 108. And certainly, in the same circumstances, a conditional vendor's reservation of title. Public Parks Amusement Co. v. Embree-McLean Carriage Co., 64 Ark. 29, 40 S.W. 582.

■ We reach the conclusion that the court below was in error in holding the

title of the trustee in bankruptcy superior to that of the appellant under Nebraska law. Neither party to the conditional sales contract was a resident of Nebraska. So far as it appears, the vendee had no business in Nebraska except the construction work to which the rock crusher was removed. At the time of the execution of the contract the parties did not agree nor intend that the rock crusher should be removed to Nebraska. In the opinion of the vendee, at least, the work in Nebraska was to be completed within ninety days from its beginning. The rock crusher was removed to Nebraska in June 1941, and its presence there was discovered by the vendor the following September. Giving to the vendor's consent to the location of the rock crusher in Nebraska the full effect which may be ascribed to it under the evidence in this case, we think it cannot be said that the conclusion follows that either party intended that the rock crusher's location in Nebraska should be anything but temporary, or that it should there acquire a permanent situs as a part of the property in that state. But for unfavorable weather conditions beyond the control of either party to the sales contract, in the ordinary course of events the rock crusher would have been removed from Nebraska to some other state in which the vendee was engaged in operations.

Moreover, the trustee in bankruptcy does not occupy the preferred status of a Nebraska purchaser or mortgagee for value and without notice. His position is that of a judgment creditor who had perfected a lien upon the rock crusher by legal or equitable means, a position he holds only by force of the Bankruptcy Act. The status of ideal creditor given him by the Bankruptcy Act is not given him for the protection of innocent purchasers for value, or even for judgment creditors of the vendee, but for the equal benefit of all the creditors of the vendee. Whether these creditors have been prejudiced by the secret lien is entirely immaterial. The relative equities of the trustee for the vendee's creditors and the conditional vendor are not such as to support a construction of Nebraska laws favorable to the trustee, unless that construction clearly is required by Nebraska cases.

The judgment of the district court is reversed, with directions to allow appellant's petition for reclamation.